# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

APPLIED CAPITAL, INC.,

      Plaintiff,

vs.                                          No. CV 05-00098 JB/ACT

FRANCIS GIBSON; GARY BELLINGER;
BRIAN AMBROSE; KIRK VOYLES;
HERITAGE COMMERCIAL SERVICES, INC.;
GERALD LEE SCOGIN, JR; GRIZZLY DRILLING, INC.;
JUSTIN HERMAN, NEW ENERGY CO., L.L.C., and
EDWARD L. PRESLEY,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgement Against Defendant Gerald Lee Scogin, Jr. and Grizzly Drilling, Inc. on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust Enrichment Claims, filed February 2, 2007 (Doc. 174)("Motion"). The Court held a hearing on the motion on July 31, 2007. The primary issues are: (i) whether the Court should enter summary judgment in favor of Plaintiff Applied Capital, Inc. ("Applied Capital") and against Defendants Gerald Lee Scogin, Jr. and Grizzly Drilling, Inc. on four of Applied Capital's claims; and (ii) whether, if the Court grants summary judgment in favor of Applied Capital, the Court should award Applied Capital compensatory damages, punitive damages, and attorneys' fees. Because the Court believes that Applied Capital is entitled to summary judgment with respect to liability, the Court will grant Applied Capital's motion in part. Because the Court also believes, however, that Applied Capital

is not yet entitled to all the damages it seeks, the Court will deny Applied Capital's motion in part.

## FACTUAL BACKGROUND

Defendant Edward L. Presley has operated Defendant New Energy Company, L.L.C. ("New Energy") since 2001. See Memorandum in Support of Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendants Edward Presley and New Energy Co., LLC on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust Enrichment Claims, filed February 2, 2007 (Doc. 182)("Presley Memo"), Exhibit 1, Deposition of Edward L. Presley at 6:12-13; 7:3-4 (taken October 18, 2006)("Presley Depo."); Verified Fourth Amended Complaint for Fraud, Negligent Misrepresentation, Unjust Enrichment, Breach of Contract, Violation of the New Mexico Unfair Trade Practices Act, and Civil Conspiracy ¶ 10, at 2-3, filed June 30, 2006 (Doc. 120)("Fourth Complaint").  New Energy holds leases for coal bed methane ("CBM") gas lying underneath tracts of land in Wyoming. See Memorandum in Support of Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendant Francis Gibson on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust Enrichment Claims, filed February 2, 2007 (Doc. 180)("Gibson Memo"), Exhibit 1, Deposition of Francis Gibson at 47:10-21 (taken December 10, 2004)("Gibson Depo.").  Presley had been attempting to obtain financing to drill in, and extract the gas from, these tracts before 2004. See id.

At or about the end of 2003/beginning of 2004, Presley, Scogin, Defendant Francis Gibson, and Defendant Justin Herman met each other. See Presley Memo, Exhibit 2, Deposition of Justin Wallace Herman at 14:1-2 (taken October 16, 2006)("Herman Depo."); Memorandum in Support of Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendants Gerald Lee Scogin, Jr. and Grizzly Drilling, Inc. on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust Enrichment Claims, filed February 2, 2007 (Doc. 175)("Scogin

Memo"), Exhibit 1, Deposition of Gerald L. Scogin, Jr. at 19:8-10; 21:10-15 (taken December 30, 2004)("Scogin Depo."). Herman was referred to as New Energy's "financial director." Herman Depo. at 15:4-12; Presley Memo, Exhibit 4, Affidavit of Mark Burkhard ¶ 3, at 1 (executed February 1, 2007)("Burkhard Aff."). Gibson was a director of Legato Staffing and Integration Services, LLC ("Legato Staffing"). See Burkhard Aff. ¶ 3, at 1; Gibson Depo. at 22:13-18; 22:25-23:2. Scogin operated Defendant Grizzly Drilling, Inc. ("Grizzly Drilling"). See Fourth Complaint ¶ 7, at 2.

Gibson, Herman, Presley, and Scogin developed a program to obtain the funds necessary to finance the CBM drilling project: Legato Staffing would "rent" ten million dollars from an individual named Ray Benton/Ray Benson; the ten million dollars would be invested in a "high yield investment program" ("HYIP") in Europe; the HYIP would generate profits on the order of five to ten percent, or two to four million dollars, per month, and those profits would be used to finance the drilling project. Presley Depo. at 16:25-18:9; 62:18-64:8; Fourth Complaint ¶¶ 7, 9, 12, at 2-3. To undertake this program, however, Gibson, Herman, Presley, and Scogin needed to raise funds to start the HYIP. They agreed to obtain that money from Applied Capital by factoring New Energy's purported purchase from Grizzly Drilling, and Legato Staffing's immediate repurchase from New Energy, of a drilling rig for $550,000.00. See Fourth Complaint ¶ 15, at 2-3; Presley Depo. at 18:5-9; Gibson Depo. at 36:6-38:2.

Herman and Presley contacted Applied Capital, representing that they wanted to obtain funding for New Energy to purchase a drilling rig from Grizzly Drilling and that, after acquiring the rig from Grizzly Drilling, New Energy would immediately resell the rig to Legato Staffing, which would then use the rig on New Energy's property to drill for natural gas. See Burkhard Aff. ¶ 3, at 1-2. Applied Capital tentatively agreed to finance the transaction by means of purchase order financing and factoring: in exchange for Legato Staffing's execution of an estoppel agreement and

its agreement to pay New Energy's invoice -- in the amount of $625,000.00 -- directly to Applied Capital within 60 days, and New Energy's assignment of its receivables to Applied Capital, Applied Capital would wire $550,000.00 to Grizzly Drilling upon its agreement to deliver the rig.  See id.; Fourth Complaint ¶ 15, at 3-4.

On May 10 and 11, 2004, Herman and Presley submitted to Applied Capital documentation, which Gibson provided, concerning Legato Staffing's financial resources.  See id. ¶ 17, at 4.  The documentation represented that Legato Staffing had over ten million dollars in unrestricted funds and otherwise was in a financially strong position.  See id.; Gibson Depo. at 100:5-20.  The representations were false: Legato Staffing was not financially strong, had zero unrestricted funds, and had a negative net worth.  See Gibson Depo. at 100:21-101:17.

Gibson, Presley, and Scogin executed and submitted to Applied Capital documentation to memorialize the sale of the rig from Grizzly Drilling to New Energy, and from New Energy to Legato Staffing.  See Burkhard Aff. ¶ 8, at 4.  In this documentation, these Defendants represented: (i) that they personally had inspected the rig; and (ii) that within two business days following the wiring of the $550,000.00 from Applied Capital to Grizzly Drilling, Grizzly Drilling would deliver the rig to Legato Staffing at New Energy's lease property in Wyoming.  See id.  Implicit, if not explicit, in these representations was the fundamental representation that the rig existed.  See id. ¶ 8, at 4-5.  The Defendants knew that these representations were false; they had not inspected the rig and they did not deliver it to New Energy's lease property.  See Presley Depo. at 29:20-22; 41:4-15; Scogin Depo. at 37:17-38:9; Gibson Depo. at 43:15-16; 44:16-21; 83:15-84:24.

Grizzly Drilling did not own a drilling rig.  See Scogin Memo, Exhibit 2, Deposition of Charles Newton at 19:1-21:5; 28:12-31:16; 34:6-39:25 (taken November 30, 2006)("Newton Depo.").  Scogin's uncle owned the "EMSCO" drilling rig that the documentation submitted to

Applied Capital identified.  See id. at 19:1-21:5; 28:12-31:16; 34:6-39:25.  Scogin contacted his uncle about buying the rig in 2003.  See id. at 36:11-13.  At that time, Scogin obtained pictures and a list of the rig's specifications, which in turn were provided first to Presley and then to Applied Capital.  See id. at 37:12-25; Presley Depo. at 35:2-13; 101:5-103:1.  Scogin, however, did not purchase or possess the rig.  See Newton Depo. at 19:1-21:5; 28:12-31:16; 34:6-39:25.  Scogin's uncle sold the rig to a third party in June 2004.  See id. at 20:8-10.

The Defendants intentionally deceived Applied Capital, misrepresenting Legato Staffing's financial resources and creditworthiness, the existence of the rig, and the bona fides of the transaction generally.  See Fourth Complaint ¶¶ 30, 34-56, at 7-11.  Applied Capital reasonably relied on the Defendants' misrepresentations to its detriment in agreeing to finance the purchase of the non-existent rig.  See Burkhard Aff. ¶¶ 7, 9-10 at 3-5.  Applied Capital wired $550,000.00 to Grizzly Drilling on May 19, 2004.  See id. ¶ 10, at 5.

On May 27, 2004, Presley sent an e-mail to Applied Capital, representing that the rig had been delivered to the lease property on May 26, 2004.  See Presley Memo, Exhibit 6, E-mail Exchange between Ed Presley and Mark Burkhard (dated May 27, 2004)("May 27, 2004 E-mail").  Presley knew that this representation was false.  See Presley Depo. at 39:4-10; 41:4-15.  Applied Capital relied on this misrepresentation to its detriment.  See Fourth Complaint ¶¶ 32, 34-56, at 8-11.

Gibson, Herman, Presley, and Scogin did not intend to carry out the course of action outlined in the Closing Agreement.  See Fourth Complaint ¶ 31, at 7.  The $550,000.00 was not used to pay Grizzly Drilling for the purchase of the rig.  See Scogin Depo. at 47:12-14; 49:23-24.  Instead, Scogin wired $450,000.00 of the proceeds to New Energy.  See id. at 47:12-14.  Wire transfers and other payments were made out to Herman, Gibson, Gibson's girlfriend, Amy Arial, and the credit references.  See Gibson Memo, Exhibit 4, New Energy Co., LLC Find Report (May 20-July 31,

2004); Scogin Memo, Exhibit 5, Grizzly Drilling, Inc. Corporate Checking Statement (dated April 8-June 7, 2004).

Legato Staffing defaulted on the $625,000.00 payment that was due to Applied Capital by July 10, 2004.  See Fourth Complaint ¶ 33, at 8; Burkhard Aff. ¶ 12, at 6.  To date, Applied Capital has not received payment.  See Fourth Complaint ¶ 33, at 8; Burkhard Aff. ¶ 12, at 6.  New Energy is in bankruptcy, see Burkhard Aff. ¶ 12, at 6, and Applied Capital believes Legato Staffing to be insolvent, see Scogin Memo at 9.

Presley has testified regarding the conditions that existed before the parties entered into the Closing Agreement.  Presley has testified: (i) that he never had absolute proof that the drilling rig existed, see Defendant Edward L. Presley's Motion to Dismiss Defendant From this Action or in the Alternative Such Relief the Court Finds Appropriate to Resolve the Matter Between the Parties, filed February 12, 2007 (Doc. 188), Exhibit A, Presley Depo. at 30:18-19; (ii) that Applied Capital did not seem interested in confirming the rig's existence, see id. at 58:9-11; and (iii) that it was explained to Applied Capital that the funds being wired to Grizzly Drilling were going to be used to fund involvement in the HYIP, see id. at 59:17-25, 91:8-24.

## PROCEDURAL BACKGROUND

On June 30, 2006, Applied Capital filed its Verified Fourth Amended Complaint for Fraud, Negligent Misrepresentation, Unjust Enrichment, Breach of Contract, Violation of the New Mexico Unfair Trade Practices Act, and Civil Conspiracy.  See Doc. 120.  Grizzly, New Energy, Presley, and Scogin have not filed answers to that complaint.  The Clerk of the Court entered default under rule 55(a) of the Federal Rules of Civil Procedure against New Energy, Presley, and Scogin on September 9, 2006.  See Clerk's Entry of Default, filed September 9, 2006 (Doc. 138).

Applied Capital served Gibson, New Energy, Presley, and Scogin its Requests for

Admissions on August 8, 2006.  <u>See</u> Certificate of Service, filed August 8, 2006 (Doc. 128).  Scogin did not respond to Applied Capital's Request for Admissions.

Applied Capital filed its summary judgment motion and supporting memorandum on February 2, 2007.  <u>See</u> Motion; Scogin Memo.  Applied Capital moves the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, for summary judgment against Scogin and Grizzly Drilling on its Civil Conspiracy, Fraud, Breach of Contract, and Unjust Enrichment claims, as well as on Scogin's and Grizzly Drilling's liability for punitive damages.  <u>See</u> Motion at 1.  Applied Capital is also simultaneously moving for summary judgment against all of the other remaining Defendants: Presley/New Energy, Gibson, and Ambrose.  <u>See</u> Scogin Memo at 2.  Although the analysis in each of these motions overlaps to an extent, it also varies in certain respects.  For this reason, and to comply with the local rules' page limitations on exhibits, Applied Capital has filed separate motions for each Defendant/Defendant group.  <u>See</u> <u>id.</u>

Scogin and Grizzly Drilling have not filed responses.  On March 27, 2007, Applied Capital filed a Notice of Completion, giving notice that briefing on its motion for summary judgment against Scogin and Grizzly Drilling is complete.  <u>See</u> Notice of Completion, filed March 27, 2007 (Doc. 195).

## <u>LAW REGARDING SUMMARY JUDGMENT</u>

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).  The court may consider only admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

A plaintiff moving for summary judgment "must prove each element essential of the claims upon which it seeks judgment by undisputed facts." Cabo Distrib. Co. v. Brady, 821 F.Supp. 601, 607 (N.D. Cal. 1992).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(citations and internal quotations omitted).  The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Id. at 322-23.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope

that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). See Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir.1996).  A court must, however, look at the record in the light most favorable to the party opposing summary judgment. See Smith v. Denver Pub. Sch. Bd., No. 91-1285, 1994 WL 651978, at *3 (10th Cir. November 18, 1994).

Before a district court may grant summary judgment and dismiss a case because a party fails to respond to a summary judgment motion in violation of a local rule, the United States Court of Appeals for the Tenth Circuit requires the district court to address the following factors: "[i] the degree of actual prejudice to the defendant; [ii] the amount of interference with the judicial process; [iii] the culpability of the litigant. . . ." Hancock v. Okla. City, 857 F.2d 1394, 1396 (10th Cir.1988)(citing Meade v. Grubbs, 841 F.2d 1512 (10th Cir.1988)).  The district court may dismiss a case for failure to respond to a summary judgment motion "only when these aggravating factors outweigh[] the judicial system's strong predisposition to resolve cases on their merits." Hancock v. Okla. City, 857 F.2d at 1396.

With regard to pro se litigants, the Tenth Circuit has cautioned district courts not to dismiss their suits on summary judgment merely because they have failed to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. 1995).  "District courts must take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings." Jaxon v. Circle K Corp., 773 F.2d 1138, 1140 (10th Cir. 1985)(internal quotations and citations omitted).

## NEW MEXICO LAW REGARDING CIVIL CONSPIRACY

"A civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 F.3d 201, 207 (internal quotations and citations omitted).  The purpose of a civil-conspiracy claim is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members."  Seeds v. Lucero, 2005-NMCA-067, ¶ 12, 113 P.3d 859, 862 (internal quotations and citations omitted).  In Seeds v. Lucero, the New Mexico Court of Appeals listed the elements of a civil conspiracy and compared a civil conspiracy to a criminal conspiracy:

> Civil conspiracy consists of showing [i] that a conspiracy between two or more individuals existed; [ii] that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and [iii] that the plaintiff was damaged as a result of such acts.  Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators.  Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense.

Id. ¶ 18, 113 P.3d at 863-64 (internal quotations and citations omitted).  "[A]n agreement by itself, without an independent, unlawful act, is not an improper means."  Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 F.3d at 207.

With regard to corporate employees and employers, courts in other jurisdictions have held that the intra-corporate conspiracy doctrine establishes that "an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal."  Royal Airline Linen v. Weinstein, No. YC049715, 2007 WL 178896, at *6 (Cal. Ct. App. January 25, 2007)(quoting Berg & Berg Enter., LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 817 (2005)).

> A corporate employee cannot conspire with his or her corporate employer; that would be tantamount to a person conspiring with himself.  Thus when a corporate employee acts in his or her authorized capacity on behalf of his or her corporate employer, there can be no claim of conspiracy between the corporate employer and the corporate employee.

Royal Airline Linen v. Weinstein, 2007 WL 178896, at *6 (quoting Janken v. GM Hughes Elec., 46 Cal. App. 4th 55, 78 (1996)).  The intra-corporate conspiracy doctrine is a bar to liability, however, only when the agent acted solely in an official capacity; if the agent acted for his own benefit, there may be liability.  See EEOC v. MTS Corp., 937 F. Supp. 1503, 1513 n.3 (D.N.M. 1996)(Hansen, J.)(citing Nevada state law and stating, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."); Zic v. Italian Gov't Travel Office, 130 F. Supp. 2d 991, 997 (N.D. Ill. 2001)(stating that the intra-corporate conspiracy doctrine does not apply where an individual agent acts out of self-interest); Nelson v. Fontenot, 784 F. Supp. 1258, 1261 (E.D. Tex. 1992)(noting that, while a corporation cannot conspire with itself, a conspiracy may be established where individual defendants are named and those defendants act outside the scope of their employment for personal reasons)(citing Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir. 1987)); Royal Airline Linen v. Weinstein, 2007 WL 178896, at *6 (citing Everest Investors 8 v. Whitehall Real Estate Ltd. P'ship XI, 100 Cal. App. 4th 1102, 1107 (2002)).  The intra-corporate conspiracy doctrine also does not apply where the corporation conspires with a third party.  Zic v. Italian Gov't Travel Office, 130 F. Supp. 2d at 997 (citing Mehl v. Navistar Int'l Corp., 670 F. Supp. 239, 241 (N.D. Ill. 1987)).

## NEW MEXICO LAW REGARDING FRAUDULENT MISREPRESENTATION

To establish fraudulent misrepresentation, a party must demonstrate: "(i) a misrepresentation of fact, (ii) either knowledge of the falsity of the representation or recklessness on the part of the

party making the misrepresentation, [iii] intent to deceive and to induce reliance on the misrepresentation, and [iv] detrimental reliance on the misrepresentation." Cyprus Amax Minerals Co. v. Duran Sand & Gravel, Inc., No. 03-1473, 2006 WL 4079084, at *10 (D.N.M. May 31, 2006)(Browning, J.)(citing Williams v. Stewart, 2005-NMCA-061, ¶ 34, 112 P.3d 281, 290). See UJI 13-1633 NMRA. The party asserting fraudulent misrepresentation must prove each of those elements by clear and convincing evidence. See Cyprus Amax Minerals Co. v. Duran Sand & Gravel, Inc., 2006 WL 4079084, at *10 (citing UJI 13-1633 NMRA). New Mexico Uniform Jury Instruction 13-1633 indicates that a party may recover damages that fraudulent misrepresentation proximately causes. See Williams v. Stewart, 2005-NMCA-061, ¶ 34, 112 P.3d at 290. "[A] plaintiff alleging fraud may recover such damages as are the direct and natural consequences of the reliance on a fraudulent representation." Id. (quoting Indus. Supply Co. v. Goen, 58 N.M. 738, 743, 276 P.2d 509, 512 (1954)).

## NEW MEXICO LAW REGARDING UNJUST ENRICHMENT

"New Mexico has long recognized actions for unjust enrichment. . . ." Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11, 3 P.3d 695, 698 (citing Tom Growney Equip., Inc. v. Ansley, 119 N.M. 110, 112, 888 P.2d 992, 994 (Ct. App. 1994)). To prevail on an unjust enrichment claim, a party must demonstrate that: "[i] another has been knowingly benefitted at one's expense [ii] in a manner such that allowance of the other to retain the benefit would be unjust." Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11, 3 P.3d at 698. "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." Id. ¶ 11, 3 P.3d at 698-99. See Credit Inst. v. Veterinary Nutrition Corp., 2003-NMCA-010, ¶ 21, 62 P.3d 339, 344; Hydro Conduit Corp. v. Kemble, 110 N.M. 173, 175, 793 P.2d 855, 857 (1990).

## NEW MEXICO LAW REGARDING PUNITIVE DAMAGES

"To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." Eckhardt v. Charter Hospital of Albuquerque, Inc., 124 N.M. 549, 562, 953 P.2d 722, 735 (Ct. App. 1997). Punitive damages are an appropriate sanction for fraudulent misrepresentation. See Naranjo v. Paull, 111 N.M. 165, 172, 803 P.2d 254, 261 (Ct. App. 1990)(citing Hale v. Basin Motor Co., 110 N.M. 314, 795 P.2d 1006 (1990)). When punitive damages are sought, the following factors should be considered: "[i] the character of the defendant's act; [ii] the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause; and [iii] the wealth of the defendant." Stanton v. Gordon Jewelry Corp., 108 N.M. 160, 161, 768 P.2d 888, 889 (1989).

## LAW REGARDING DEFAULT/SUMMARY JUDGMENT AND DAMAGES

This motion comes before the Court at an unusual stage of the proceedings. Scogin and Grizzly Drilling have not filed an answer to the Fourth Complaint and the Clerk of the Court has entered default. Rather than moving for a default judgment, however, Applied Capital moves for summary judgment. The Court will thus analyze the law both for default and for summary judgment.

### 1.    **Default Judgment.**

If the Court treats the motion as one for a default judgment, the Court may enter judgment for liquidated damages, but will need a hearing for unliquidated damages. If the amount is unliquidated, the Court will need to set a separate hearing and, if possible, should give notice to Scogin and Grizzly Drilling. Thus, the primary issue is whether the damages that Applied Capital seeks are liquidated or unliquidated.

-13-

### a.    New Mexico Law.

With respect to awarding damages upon the issuance of a default judgment, New Mexico and federal law are essentially the same.  Rule 1-055B of the New Mexico Rules of Civil Procedure, and established case law, "clearly states that the trial court must hold a hearing to determine the amount of any unliquidated damages before it may enter a default judgment."  DeFillippo v. Neil, 2002-NMCA-085, ¶ 19, 51 P.3d 1183, 1188 (citing Armijo v. Armijo, 98 N.M. 518, 520, 650 P.2d 40, 42 (Ct. App. 1982)("[W]here the claim for damages is unliquidated, it would be an abuse of discretion not to have a hearing and to put plaintiff to the test of presenting evidence to support the claim for damages.")).

While rule 1-055B does not expressly require that notice of such a hearing be given to the defaulting defendant, "the damages hearing must be regarded as a hearing on the application for default judgment and [] written notice must be given if the [defaulting] party has appeared in the action."  Rodriguez v. Conant, 105 N.M. 746, 749, 737 P.2d 527, 530 (1987).  At a hearing to assess damages after the entry of a default, the defaulting defendant has the right to cross-examine the plaintiff's witnesses and to introduce affirmative evidence on the mitigation of damages.  See Gallegos v. Franklin, 89 N.M. 118, 123, 547 P.2d 1160, 1165 (Ct. App. 1976).

"A punitive damage claim is not admitted by a default.  Neither is punitive damages provided for in Rule 55(b)."  Id. 89 N.M. at 125, 547 P.2d at 1167 (remanding to the trial court to hold a hearing at which the parties may present evidence regarding compensatory and punitive damages).

### b.    Federal Law.

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides:

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other

matter, the court may conduct such hearings or order such references as it deems necessary.

Fed. R. Civ. P. 55(b)(2). "A court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985)(citing Venable v. Haislip, 721 F.2d 297, 300 (10th Cir. 1983)). If the damages sum is not certain or capable of easy computation, the court may hold whatever hearing or inquiry it deems necessary. See Beck v. Atlantic Contracting Co., 157 F.R.D. 61, 64 (D. Kan. 1994). "Similarly, attorney's fees may not be awarded without a hearing to determine the amount." H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d at 148.

"Entry of default precludes a trial on the merits." Olcott v. Delaware Flood Co., 327 F.3d 1115, 1119 n.3 (10th Cir. 2003). Rule 55(b)(2) does not contain an inherent jury requirement; rather, it preserves the right to a jury only when statute requires. See Olcott v. Delaware Flood Co., 327 F.3d at 1124. At least where the parties have not requested a jury prior to entry of default, the "[d]efendants do not have a constitutional right to a jury trial following entry of default." Id. Mitchell v. Bd. of County Comm'rs of the County of Santa Fe, No. 05CV1155, at **18-23 (D.N.M. May 9, 2007)(Browning, J.).

Regarding punitive damages, "[a] plaintiff cannot satisfy the certainty requirement simply by requesting a specific amount. [The plaintiff] must also establish that the amount requested is reasonable under the circumstances." Beck v. Atlantic Contracting Co., 157 F.R.D. at 65. A damages hearing may not be required before entering a punitive damages award, however, when the court is familiar with the defendant's conduct and otherwise has sufficient information with which to make a reasonable determination. See James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

With regard to multiple defendants, "when one of several defendants who is alleged to be

jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted" -- this avoids inconsistent liability determinations among joint tortfeasors. H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d at 147 (citing Frow v. DeLaVega, 82 U.S. (15 Wall.) 552 (1872)).

### 2.     Summary Judgment.

If the Court treats Applied Capital's motion as one for summary judgment, as it is labeled, then it is clear that the Court has the power to enter judgment on liability. The law is less clear about the Court's ability to enter summary judgment on damages. There does not, however, appear to be anything in the rules or in the caselaw that requires a court to treat damages issues differently from other factual issues, and that mandates a trial even where there is no genuine issue of material fact.

### a.     New Mexico Law.

Concerning the relationship between the awarding of damages and the granting of summary judgment, New Mexico and federal law also largely track each other. Rule 1-056C of the New Mexico Rules of Civil Procedure states that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." NMRA 1-056C. In Construction Contracting & Management, Inc. v. McConnell, 112 N.M. 371, 815 P.2d 1161 (1991), the New Mexico Supreme Court implicitly acknowledged rule 1-056C's applicability by holding that, because partial summary judgment was granted as to the issue of liability only, absent revision or rescission of the partial summary judgment ruling, all that remained for the jury was to determine the extent of damages. See id. at 375, 815 P.2d at 1165.

### b.     Federal Law.

Rule 56(c) of the Federal Rules of Civil Procedure contains the same language as rule 1-056C: "A summary judgment, interlocutory in character, may be rendered on the issue of liability

alone although there is a genuine issue as to the amount of damages." Fed. R. Civ. P. 56(c). In

Schnall v. Amboy Nat'l Bank, 279 F.3d 205 (3rd Cir. 2002), the United States Court of Appeals for

the Third Circuit relied on rule 56(c) in holding that the plaintiff was entitled to partial summary

judgment on the issue of liability and in remanding the case to determine the amount of damages

to be awarded. See 279 F.3d at 219. See also Granite Rock Co. v. Bay Area Bldg. Material

Teamsters Local 216, No. 89-15062, 1991 WL 133590, at *4 (9th Cir. July 22, 1991)(discussing rule

56(c)'s operation and the holding of a trial to determine damages after the granting of partial

summary judgment on the issue of liability).

### NEW MEXICO LAW REGARDING JOINT CONTRACTS

Under New Mexico law, joint contracts create joint and several liability. N.M.S.A. § 38-4-3

provides:

> All contracts, which by the common law are joint only, shall be held and construed
> to be joint and several; and in all cases of joint obligations or assumptions by
> partners and others, suit may be brought and prosecuted against any one or more of
> the parties liable thereon, and when more than one person is joined as defendant in
> any such suit, such suit may be prosecuted, and judgment rendered against any one
> or more of such defendants.

N.M.S.A. § 38-4-3. See Economy Rentals, Inc. v. Garcia, 112 N.M. 748, 762, 819 P.2d 1306, 1320

(1991)(citing N.M.S.A. § 38-4-3 and Restatement (Second) of Contracts §§ 288, 289 (1981) in

discussing and defining joint contracts).

"Where there are more promisors than one in a contract, some or all of them may promise

jointly as a unit, or some or all of them may each promise severally, or some or all of them may

promise jointly and severally." Restatement (First) of Contracts § 16. A several promise may be

defined as follows: "Where two or more parties to a contract promise separate performances, to be

rendered respectively by each of them, . . . each is severally bound for the performance which he

promises and is not bound jointly with any of the others."  Douglas v. Bergere, 94 Cal. App. 2d 267,

270, 210 P.2d 727, 729-30 (1949)(quoting Restatement (First) of Contracts § 113).  "A joint and

several contract is a contract with each promisor and a joint contract with all, so that parties having

a joint and several obligation are bound jointly as one party, and also severally as separate parties

at the same time."  12 Williston on Contracts § 36:1 (4th ed.).

> The Restatement (Second) of Contracts provides that where two or more parties to
> a contract promise the same performance to the same promisee, each is bound for the
> whole performance of the contract, whether his duty is expressed as joint, several,
> or joint and several.  It should be noted that the question whether two promisors
> promise the same or separate performances is distinct from the question whether two
> promisors of the same performance are bound by joint or by several duties or by
> both, although the two questions are sometimes confused.  The first question, what
> performances are promised, is entirely a question of interpretation of the promises,
> while the second question, distinguishing between joint and several duties, is
> primarily remedial and procedural.

Id. (quoting Restatement (Second) of Contracts §§ 288, 289)(internal quotations omitted).  "[W]hen

uncertainty arises concerning the meaning of a contract, the language used by the parties is to be

considered in the light of the surrounding circumstances and of the practical and mutual construction

placed thereon as shown by their acts and conduct before any controversy has arisen between them."

Douglas v. Bergere, 94 Cal. App. 2d at 270, 210 P.2d at 730.

## ANALYSIS

The Court believes that, based on the undisputed record before it, the Defendants' scheme

was reckless.  The uncontested facts show that Scogin, Gibson, Herman, and Presley conspired, on

behalf of themselves and their respective companies, to defraud Applied Capital out of $550,000.00.

Moreover, the undisputed facts demonstrate that the Defendants breached the Closing Agreement

with Applied Capital.  Further, the uncontested facts show that Scogin and Grizzly Drilling unjustly

received $100,000.00 from the sum of which Applied Capital was defrauded.  As such, the Court

finds Scogin and Grizzly Drilling liable for civil conspiracy, fraudulent misrepresentation, breach of contract, and unjust enrichment.

I.      **THE RECORD BEFORE THE COURT DOES NOT REVEAL A GENUINE ISSUE OF MATERIAL FACT ON ANY ISSUE RELATED TO LIABILITY.**

Given that Scogin and Grizzly Drilling have not filed an answer to the Verified Fourth Amended Complaint, which Applied Capital filed and served on them on June 30, 2006, see Doc. 120, and given that the Clerk of the Court, pursuant to rule 55(a) of the Federal Rules of Civil Procedure, entered default against Scogin and Grizzly Drilling on September 9, 2006, see Entry of Default (Doc. 138), Scogin and Grizzly Drilling have admitted all of the Verified Fourth Amended Complaint's material allegations, except those regarding the amount of Applied Capital's damages. See Fed. R. Civ. P. 8(d)("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."); Burlington N. R.R. Co. v. Huddleston, 94 F.3d 1413, 1415 (10th Cir. 1996)("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually."). Scogin also did not respond to Applied Capital's Request for Admissions, which were served on August 8, 2006. See Certificate of Service, filed August 8, 2006 (Doc. 128). Scogin, therefore, effectively admitted the substance of Applied Capital's requests. See Fed. R. Civ. P. 36(a)("The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection. . . ."); Treff v. Cook, No. 95-4082, 1995 WL 675400, at *1 (10th Cir. November 13, 1995)("Because neither [the plaintiff] nor his attorney responded within 30 days, the requests were deemed admitted."). Finally, Scogin and Grizzly Drilling did not file a response, timely or

otherwise, to this motion.  See Doc. 175.  Under local civil rule 7.1(b) of the Local Civil Rules of

the United States District Court for the District of New Mexico, Scogin's failure to file a response

in opposition to Applied Capital's partial summary judgment motion equates to consent to grant the

motion.  See D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in

opposition to a motion within the time prescribed for doing so constitutes consent to grant the

motion."); D.N.M.LR-Civ. 7.6(a) ("A response must be served within fourteen (14) calendar days

after service of the motion.").  Nevertheless, despite Scogin's consent under the rules, the Court has

reviewed Applied Capital's motion on the merits.  See Woods v. Roberts, No. 94-3159, 1995 WL

65457, at *2 (10th Cir. 1995); Hancock v. Okla. City, 857 F.2d at 1396; Jaxon v. Circle K Corp.,

773 F.2d at 1140.

Although Scogin and Grizzly Drilling do not specifically controvert any of Applied Capital's

statements of undisputed fact, or highlight any facts or evidence, the Court has reviewed the entire

record available to determine whether there are any genuine issues of material fact.  The Court

acknowledges that Presley testified that he never had absolute proof that the drilling rig existed, see

Presley Depo. at 30:18-19, that Applied Capital did not seem interested in confirming the rig's

existence, see id. at 58:9-11, and that Applied Capital was notified that the funds obtained from it

would finance investment in the HYIP,[1] see id. at 59:17-25, 91:8-24, but the Court does not believe

---

[1]

At the hearing on this motion, Applied Capital stated that Presley has also made a general
statement that he was not part of the conspiracy.  See Transcript of Hearing at 4:15-19
(Bohnhoff)(taken July 31, 2007)(The Court's citations to the transcript of the hearing refer to the
Court Reporter's original, unedited version.  Any final transcript may contain slightly different page
and/or line numbers).  The Court has, however, reviewed carefully Presley's deposition and the
remainder of the record before it and does not see any admissible evidence that makes such a
contention.  Accordingly, the Court does not believe that Presley has shown a genuine issue of
material fact whether he was part of the conspiracy.  In any case, any issue about Presley's
participation would not preclude granting summary judgment against Scogin and Grizzly Drilling.

that those assertions raise any genuine issue of material fact.  Presley's testimony does not contradict or discount the evidence Applied Capital presents concerning the Defendants' involvement in conspiring to defraud Applied Capital, in defrauding Applied Capital, in being unjustly enriched, and in breaching the Closing Agreement.  Presley's testimony does not undermine or contradict the fact that the Defendants provided fraudulent information to Applied Capital to induce it to provide the Defendants $550,000.00 or that Applied Capital has not received the $625,000.00 due it pursuant to the Closing Agreement.  The Court is not obligated to rely on what is no more than a scintilla of evidence -- evidence that Scogin and Grizzly Drilling are not even using or emphasizing -- to block summary judgment.  The Court does not believe that, with all of Scogin's and Grizzly Drilling's concessions, a reasonable jury would use Presley's limited testimony to override the undisputed facts that Applied Capital has presented and deny Applied Capital judgment.

## II.   SCOGIN CONSPIRED WITH THE OTHER DEFENDANTS TO DEFRAUD APPLIED CAPITAL.

The uncontested allegations in Applied Capital's complaints, see Fed. R. Civ. P. 8(d); the unanswered requests for admission, see Fed. R. Civ. P. 36(a); and the documents and deposition testimony attached to Applied Capital's summary judgment motion demonstrate, undisputedly, that Scogin, individually and on behalf of Grizzly Drilling, entered into an agreement with Gibson, Herman, and Presley, and their respective companies, and took affirmative steps with those individuals and entities to defraud Applied Capital into wiring Grizzly Drilling $550,000.00 for the purchase of a non-existent drilling rig. [2]See Herman Depo. at 14:2; Scogin Depo. at 19:8-10; 21:10-

---

[2]

The Court will not consider, for purposes of this motion, whether the Defendants conspired to breach the Closing Agreement.  In the Verified Fourth Amended Complaint for Fraud, Negligent Misrepresentation, Unjust Enrichment, Breach of Contract, Violation of the New Mexico Unfair Trade Practices Act, and Civil Conspiracy, Applied Capital premised its civil conspiracy claim on

15; Presley Depo. at 16:25-18:9; 18:5-9; 62:18-64:8; Gibson Depo. at 36:6-38:2; Fourth Complaint at ¶¶ 7, 9, 12, 15, 31, at 2-3, 7.  The Court finds that Applied Capital is entitled to summary judgment on the civil conspiracy issue.

## III.   SCOGIN AND HIS CO-CONSPIRATORS DEFRAUDED APPLIED CAPITAL.

Because Scogin and Grizzly Drilling conspired with Gibson, Herman, Legato Staffing, Presley, and New Energy, he is liable for his own fraudulent misrepresentations and those of his fellow co-conspirators.  See Seeds v. Lucero, 2005-NMCA-067, ¶ 19, 113 P.2d at 865 ("[A] claim of civil conspiracy is a claim seeking to impute liability from one co-conspirator to another."); Ettenson v. Burke, 2001-NMCA-003, ¶ 12, 17 P.3d 440, 445 ("The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members.").

Scogin's and his co-conspirators' fraudulent misrepresentations can be grouped into several categories.  First, to obtain the $550,000.00 from Applied Capital, Gibson, Herman, and Presley sent Applied Capital several documents representing that Legato Staffing had substantial assets and intimating that it was capable of making the $625,000.00 payment that the Closing Agreement contemplated.  See Fourth Complaint ¶ 17, at 4; Gibson Depo. at 100:5-101:17.  On May 10 and 11, 2004, Herman and Presley sent to Applied Capital documentation, which Gibson provided, representing that Legato Staffing possessed an unrestricted bank account with a balance of ten million dollars.  See Fourth Complaint ¶ 17, at 4; Gibson Depo. at 100:5-20.  The documentation

---

only one wrongful act: fraudulent misrepresentation.  See Fourth Complaint ¶¶ 64-71, at 13-14.  Applied Capital did not, in the Verified Fourth Amended Complaint, state that its civil conspiracy claim was also based on breach of contract.  See id. ¶¶ 14-71, at 3-14.  The Court believes it would be unfair and prejudicial to allow Applied Capital to assert now that its civil conspiracy claim rests upon both fraudulent misrepresentation and breach of contract.  The Court will therefore not consider whether the Defendants conspired to breach the Closing Agreement.

sent to Applied Capital included a purported HSBC Bank statement for the account, confirming a balance of ten million dollars.  See Fourth Complaint, Exhibit 2, Letter from HSBC to Francis Gibson (dated April 27, 2004).  On May 12, 2004, Gibson wrote to Applied Capital, stating that Legato Staffing was "on sound financial footing."  Fourth Complaint, Exhibit 4, Letter from Francis Gibson to Jim Scott (dated May 12, 2004).  Those representations were false.  Legato Staffing was not financially strong, it had no unrestricted funds, and it had a negative net worth.  See Gibson Depo. at 100:21-101:17.

Second, Gibson and Presley misrepresented that they had inspected the drilling rig.  On May 18, 2004 Gibson represented to Applied Capital that Legato Staffing "has conducted all such inspections of the [drilling rig] as it has deemed necessary and has found the [e]quipment to be complete, in proper working order, and otherwise fully satisfactory to Legato," and that "Legato has not relied upon any representation by New Energy or any other person with respect to the condition of the equipment."  Fourth Complaint, Exhibit 6, Letter from Mark Burkhard to Francis Gibson (dated May 19, 2004) at 1-2.  Similarly, in the Bill of Sale that Gibson attached to his acknowledgment, he represented that the drilling rig was of Legato Staffing's selection and was found to be in satisfactory condition upon inspection.  See Letter from Mark Burkhard to Francis Gibson (dated May 19, 2004), Exhibit B, Bill of Sale ("Bill of Sale").  Gibson, in his deposition, however, admitted that he had not seen the drilling rig and stated that, in contradiction to his representations to Applied Capital, he accepted assurances regarding the rig that he received from New Energy's Herman and Presley.  See Gibson Depo. at 43:15-16; 44:16-21; 83:15-84:24. Additionally, while Presley now admits that he never saw the drilling rig and does not know if it exists, see Presley Depo. at 29:20-22, he represented in Grizzly Drilling's May 5, 2004 invoice to New Energy that he or his authorized representative had inspected the rig, see Burkhard Aff. ¶ 8,

at 4; Burkhard Aff., Exhibit B, Purchase Order ("Purchase Order").

Third, Gibson, Presley, and Scogin misrepresented that Grizzly Drilling owned the drilling rig identified in Presley's correspondence with Applied Capital, in the Closing Agreement, and in the Bill of Sale attached to Gibson's May 18, 2004 acknowledgment.  See Fourth Complaint ¶ 17, at 4; Fourth Complaint, Exhibit 3, Closing Agreement; Gibson Depo. at 100:5-20; Bill of Sale; Purchase Order.  Scogin did not own the drilling rig that was the purported subject of the transaction with Applied Capital.  See Newton Depo. at 19:1-21:5; 28:12-31:16; 34:6-39:25.  Scogin gave Presley photographs and specifications of the drilling rig in May 2004.  See Presley Depo. at 35:2-13; 101:5-103:1.  The specifications were incorporated into the transaction documents and Presley e-mailed the photographs to Applied Capital.  See Closing Agreement; Presley Memo, Exhibit 5, E-mail from Ed Presley to Jim Scott (dated December 14, 2004).  Scogin obtained the photographs and specifications from his uncle, who did own the rig.  See Newton Depo. at 19:1-21:5; 28:12-31:16; 34:6-39:25.  In 2003, Scogin contacted his uncle about purchasing the rig; Scogin obtained the photographs and specifications at that time.  See id. at 36:11-13; 37:12-25.  Scogin never purchased or possessed the drilling rig, and his uncle sold it to a third party in June 2004.  See id. at 19:1-21:5; 28:12-31:16; 34:6-39:25.

Fourth, in paragraph 5 of the Closing Agreement, Gibson, Presley, and Scogin misrepresented that Grizzly Drilling would deliver the drilling rig to New Energy's project site within two days of Applied Capital's transfer of funds.  See Burkhard Aff. ¶ 8, at 4.  On May 27, 2004, Presley perpetuated this misrepresentation by assuring Applied Capital, via e-mail, that the rig had been delivered to the New Energy site.  See May 27, 2004 E-mail.  Scogin acknowledges that the rig was not delivered; he asserts that, shortly after Applied Capital transferred the funds, Presley instructed him not to deliver the drilling rig.  See Scogin Depo. at 37:17-38:9.  At that time,

however, Legato Staffing held title to the drilling rig, and Presley had no authority to give such an instruction.  See Closing Agreement.  Moreover, the Grizzly Drilling rig did not exist.  See Newton Depo. at 19:1-21:5; 28:12-31:16; 34:6-39:25.  Nevertheless, the timing of Presley's instruction to Scogin and Presley's misrepresentation on May 27, 2004 is further evidence of the conspirators' shared intent not to abide by the Closing Agreement.

Finally, Gibson, Presley, and Scogin misrepresented to Applied Capital that the subject of the Closing Agreement was the financing of the purchase of a drilling rig to be used on New Energy's drilling project.  See Closing Agreement.  No Grizzly Drilling rig existed, and the money was not to be used on the drilling project.  See Scogin Depo. at 47:12-14; 49:23-24; Newton Depo. at 19:1-21:5; 28:12-31:16; 34:6-39:25.  The co-conspirators agreed, in advance, that Scogin would provide New Energy $450,000.00 out of the $550,000.00 that Applied Capital wired, that they would distribute a portion of $450.000.00 among themselves, and that they would use the balance to fund the HYIP.  See Fourth Complaint ¶¶ 15, 31, at 2-3, 7; Scogin Depo. at 47:12-14; Presley Depo. at 17:10-18:9; New Energy Co., LLC Find Report; Grizzly Drilling, Inc. Corporate Checking Statement.

Applied Capital relied on the misrepresentations about Legato Staffing's financial condition in determining whether Legato Staffing would be capable of paying the $625,000.00 invoice that Applied Capital was purchasing in exchange for transferring the $550,000.00.  See Burkhard Aff. ¶ 7, at 3.  Applied Capital also relied on the representations about the existence, inspection, and delivery of the drilling rig, because the rig was an asset that could be located and liquidated in the event of a default.  See id. ¶ 9, at 4-5.  Applied Capital relied further on the bona fides of the transaction in deciding that Grizzly Drilling, Legato Staffing, and New Energy were legitimate companies with which it could do business.  See id. ¶ 10, at 5.  Based on the Defendants'

misrepresentations, Applied Capital extended $550,000.00 in credit to Legato Staffing.  Applied

Capital has been damaged, because the debt remains unpaid.  See id. ¶ 12, at 6.  Based on the

foregoing, the Court concludes that Applied Capital is entitled to summary judgment on the

fraudulent misrepresentation issue.

Moreover, because there is no factual dispute concerning the amount that was fraudulently

obtained from Applied Capital, see Celotex Corp. v. Catrett, 477 U.S. at 322 (ruling that summary

judgment should be granted if there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law), and noting that the defrauded amount is a sum certain, see

H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d at 148 (stating that a court can enter default

judgment without a hearing if the amount claimed is liquidated or capable of mathematical

calculation), the Court will award $550,000.00 in damages to Applied Capital on its fraudulent

misrepresentation claim against Scogin and Grizzly Drilling, see Closing Agreement at 1-2 (stating

that Applied Capital may elect to make the advance of the drilling rig purchase price, $550,000.00).

There does not appear to be any caselaw that requires a hearing and/or trial on damages where the

amount of damages is certain and undisputed.  No party has made a jury demand in this case, and

while rule 56 allows a partial summary judgment on liability and leaves for another day the

resolution of damages where damages are contested, it does not state that the general rules regarding

summary judgment do not apply to damages when they are undisputed.

## IV.  GRIZZLY DRILLING, LEGATO STAFFING, AND NEW ENERGY BREACHED THE CLOSING AGREEMENT.

Preliminarily, the Court notes that Gibson, Presley, and Scogin are not parties to the Closing

Agreement and that therefore they cannot be held liable for its breach.  See Ettenson v. Burke, 2001-

NMCA-003, ¶ 25, 17 P.3d at 449 ("As a general rule, [the CEO] cannot be held personally liable

for the debts of the corporation or for its breach of contract."); Closing Agreement at 1(stating that

the Closing Agreement is made by and among Applied Capital, Grizzly Drilling, Legato Staffing,

and New Energy).  Grizzly Drilling, Legato Staffing, and New Energy breached the Closing

Agreement.  First, Legato Staffing did not pay Applied Capital $625,000.00 by July 10, 2004.  See

Burkhard Aff. ¶ 12, at 6.  Second, in violation of paragraph 5 of the Closing Agreement, the drilling

rig was not delivered to New Energy's lease site.  See Scogin Depo. at 37:17-38:9.  Third, the

$550,000.00 wire from Applied Capital was not used to pay, and was not intended to pay, Grizzly

Drilling for the purchase of a drilling rig.  See id. at 47:12-14; 49:23-24; Newton Depo. at 19:1-21:5;

28:12-31:16; 34:6-39:25; Fourth Complaint ¶¶ 15, 31, at 2-3, 7; Presley Depo. at 17:10-18:9.

Furthermore, Scogin wired $450,000.00 of the sum Applied Capital provided to New Energy.  See

Fourth Complaint ¶¶ 15, 31, at 2-3, 7; Scogin Depo. at 47:12-14; Presley Depo. at 17:10-18:9.  Bank

records reflect that transfers and other payments were then made out to Arial, Gibson, Herman, and

the credit references.  See New Energy Co., LLC Find Report; Grizzly Drilling, Inc. Corporate

Checking Statement.  Presley kept the balance of the $450,000.00 for use in arranging the HYIP.

See Presley Depo. at 17:10-18:9.

These actions breached the material terms of the Closing Agreement, see UJI 13-823 NMRA

(instructing that failure to perform substantial obligations of the contract constitutes breach), and

damaged Applied Capital, see Burkhard Aff. ¶ 12, at 6.  The non-existence of the drilling rig

damaged Applied Capital, because there was no asset available to liquidate to satisfy Legato

Staffing's payment obligation.  See id.  Considering the above, the Court will enter summary

judgment in favor of Applied Capital on the breach of contract issue.

The Court will not, at this stage, however, award Applied Capital damages on its breach of

contract claim.  See Fed. R. Civ. P. 56(c) ("A summary judgment, interlocutory in character, may

be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."); Fed. R. Civ. P. 55(b)(2) (allowing the court to hold whatever hearing or inquiry it deems necessary in order to determine damages after entry of default); NMRA 1-056C (same); NMRA 1-055B.  The Court believes that a question exists concerning what portion of Applied Capital's breach-of-contract damages should be assigned to Grizzly Drilling.  See Celotex Corp. v. Catrett, 477 U.S. at 322 (ruling that summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law).  The Court also notes the amount of breach-of-contract damages that should be apportioned to Grizzly Drilling is not a sum certain.  See H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d at 148 (stating that a court can enter default judgment without a hearing if the amount claimed is liquidated or capable of mathematical calculation).

The apportionment task is an issue here because the Court cannot find, on the record before it, that the Closing Agreement was a joint contract.  Parties to a contract that jointly promise to perform may be held jointly and severally liable for failure to do so.  See N.M.S.A. § 38-4-3.  The Court believes, however, that the Closing Agreement is more accurately described as a single contract containing multiple parties' several, rather than joint, promises, and that, as such, Grizzly Drilling, Legato Staffing, and New Energy cannot be held jointly and severally liable for breach. See Douglas v. Bergere, 94 Cal. App. 2d at 270, 210 P.2d at 729-30 ("Where two or more parties to a contract promise separate performances, to be rendered respectively by each of them, . . . each is severally bound for the performance which he promises and is not bound jointly with any of the others.").  According to the Closing Agreement, Grizzly Drilling promises to transfer title to the drilling rig to New Energy and to deliver the rig to Legato Staffing, New Energy promises to transfer title to the rig and provide a bill of sale to Legato Staffing, and Legato Staffing promises to provide

-28-

an estoppel letter and $625,000.00 to Applied Capital.  <u>See</u> Closing Agreement at 2-3.  The Court finds that, based on the language of the Closing Agreement, the nature of these promises is several, not joint.  The Court thus concludes that it cannot hold Grizzly Drilling, Legato Staffing, and New Energy jointly and severally liable for breach of the Closing Agreement and that the damages Applied Capital has suffered as a result of breach must be apportioned among Grizzly Drilling, Legato Staffing, and New Energy.  The Court will deny Applied Capital's request for summary judgment insofar as its seeks an award of damages for breach of contract.

## V.   <u>SCOGIN AND GRIZZLY DRILLING WERE UNJUSTLY ENRICHED.</u>

To prevail on its unjust enrichment claim against Scogin and Grizzly Drilling, Applied Capital must demonstrate that: "[i] [Scogin/Grizzly Drilling] has been knowingly benefitted at [Applied Capital's] expense [ii] in a manner such that allowance of [Scogin/Grizzly Drilling] to retain the benefit would be unjust."  <u>Ontiveros Insulation Co. v. Sanchez</u>, 2000-NMCA-051, ¶ 11, 3 P.3d at 698.  Bank accounts for Grizzly Drilling and New Energy reflect the following transactions: Applied Capital wired $550,000.00 to Grizzly Drilling on May 19, 2004; Scogin wired $450,000.00 to New Energy on May 20, 2004; Presley wired $50,500.00 to Gibson and $14,500.00 to Arial on May 20, 2004; and Presley wired another $10,000.00 to Gibson on May 26, 2004.  <u>See</u> Grizzly Drilling, Inc. Corporate Checking Statement; New Energy Co., LLC Find Report.  Scogin left $100,000.00 in Grizzly Drilling's account.  <u>See</u> Grizzly Drilling, Inc. Corporate Checking Statement.

There is no disputed issue of material fact that Scogin, personally and on behalf of Grizzly Drilling, received $100,000.00 of the $550,000.00 that Applied Capital wired to Grizzly Drilling.  It would be unjust for Scogin and Grizzly Drilling to retain this amount.  It would not be just for Scogin and/or Grizzly Drilling to retain the $100,000.00 under these circumstances.  Accordingly,

the Court will enter summary judgment in favor of Applied Capital on the unjust enrichment issue.

Further, because there is no factual dispute regarding the amount by which Scogin and Grizzly Drilling were unjustly enriched, see Celotex Corp. v. Catrett, 477 U.S. at 322 (ruling that summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law), and noting that the unjust enrichment amount is calculable with certainty, see H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d at 148 (stating that a court can enter default judgment without a hearing if the amount claimed is liquidated or capable of mathematical calculation), the Court will award $100,000.00 in damages to Applied Capital on its unjust enrichment claim against Scogin and Grizzly Drilling, see Grizzly Drilling, Inc. Corporate Checking Statement.

## VI.   SCOGIN AND GRIZZLY DRILLING ARE LIABLE TO APPLIED CAPITAL FOR PUNITIVE DAMAGES.

Based on the undisputed record before it, the Court finds that Scogin's actions, personally and on behalf of Grizzly Drilling, and the actions of his co-conspirators, in misleading Applied Capital into engaging in the drilling rig transaction, were willful, wanton, malicious, and fraudulent. The Court believes that an award of punitive damages to punish Scogin and Grizzly Drilling would be appropriate.  See Eckhardt v. Charter Hospital of Albuquerque, Inc., 124 N.M. at 562, 953 P.2d at 735 ("To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level."); Naranjo v. Paull, 111 N.M. at 172, 803 P.2d at 261 (holding that punitive damages are an appropriate sanction for fraudulent misrepresentation).  The Court notes that no party has filed a jury demand, so the Court is in as good a position, as it will ever be to decide, on this record, whether punitive damages are appropriate.

-30-

While the Court finds that the conduct of Scogin and Grizzly Drilling was willful, wanton, malicious, and fraudulent, it cannot, at this juncture, award punitive damages.  The Court has not been provided information on the amount and reasonableness of the punitive damages Applied Capital seeks from Scogin and Grizzly Drilling.  Without such information, the Court cannot make a punitive damages award.  The Court will therefore deny Applied Capital's request for summary judgment on punitive damages.

With respect to attorneys' fees, based on the language contained within the Closing Agreement, the Court finds that Applied Capital is entitled to its reasonable attorneys' fees and expenses as the prevailing party against Grizzly Drilling.  See Closing Agreement at 5 (stating that the "prevailing party" is the party recovering "any funds whatsoever from another party).  While the Court cannot determine contract damages against Grizzly Drilling at this time, Applied Capital has proved that Grizzly Drilling breached its contract with it.  Accordingly, Applied Capital is the prevailing party on that issue and is entitled to attorneys' fees from Grizzly Drilling for proving the breach of contract.

**IT IS ORDERED** that the Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendants Gerald Lee Scogin, Jr. and Grizzly Drilling, Inc. on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust Enrichment Claims is granted in part and denied in part.  Summary judgment on liability is granted to Applied Capital and against Defendants Gerald Lee Scogin, Jr. and Grizzly Drilling, Inc. on Applied Capital's claims for civil conspiracy, fraudulent misrepresentation, breach of contract, and unjust enrichment.  The Court also enters summary judgment in favor of Applied Capital on the issue of whether Scogin and Grizzly Drilling acted willfully, wantonly, maliciously, and fraudulently.  Further, the Court awards Applied Capital $550,000.00 against Scogin and Grizzly Drilling.  The Court notes that the Defendants are jointly

and severally liable to Applied Capital for the $550,000.00.  See Saiz v. Belen School Dist., 113

N.M. at 400, 827 P.2d at 115 (stating that joint and several liability applies to intentional torts).  The

Court also grants summary judgment to Applied Capital and against Grizzly Drilling on the issue

of attorneys' fees; Grizzly Drilling must pay Applied Capital's reasonable attorneys' fees and

expenses in accordance with the Closing Agreement.  The Court denies summary judgment to

Applied Capital on its request for breach-of-contract damages and on the amount of punitive

damages.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel*:

Henry M. Bohnhoff
Bryan J. Davis
Rodey, Dickason, Sloan, Akin
  & Robb, P.A.
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Francis Gibson
Hailey, Idaho

> *Defendant pro se*

Michael Alarid, Jr.
The Alarid Law Firm, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant Gary Bellinger*

Gerald Lee Scogin, Jr.
Lawrenceville, Illinois

> *Defendant pro se*

Justin Herman
Pittsburgh, Pennsylvania

     *Defendant pro se*

Robert A. Johnson
Johnson & Nelson, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Kirk Voyles and*
       *Heritage Commercial Services, Inc.*

Brian Ambrose
Laguna Beach, California

     *Defendant pro se*

New Energy Co. LLC
Sheridan, Wyoming

     *Defendant pro se*

Edward Presley
New Energy Co. LLC
Sheridan,Wyoming

     *Defendant pro se*