IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

APPLIED CAPITAL, INC.,

       Plaintiff,

vs.                                                                    No. CV 05-98 JB/ACT

FRANCIS GIBSON; GARY BELLINGER,
BRIAN AMBROSE, KIRK VOYLES,
HERITAGE COMMERCIAL SERVICES, INC.,
GRIZZLY DRILLING, INC.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on  Defendant  Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceedings, filed April 1, 2005 (Doc. 17).  The Court held a hearing on the motion on May 11, 2006.  The primary issues are: (i) whether the Court should dismiss the Plaintiff Applied Capital, Inc.'s Complaint against Defendant Francis Gibson on grounds of improper venue; and (ii) whether the Court should, in the alternative, stay proceedings pending the results of Applied Capital's California state court litigation against Francis' principal, Legato Staffing and Integration Services, LLC, and other unnamed Defendants.  Because the Court has already determined that it has personal jurisdiction over the parties, and because there is no compelling reason for the court to stay these proceedings, the Court will deny Gibson's motion to dismiss or to stay.

**PROCEDURAL BACKGROUND**

On January 28, 2005, Applied Capital commenced an action in this Court alleging that Gibson, along with five other individuals and four related entities, had engaged in a scheme to

defraud Applied Capital into advancing money to be routed through the various entities to facilitate the purchase of a drilling rig. The money disappeared, and there was not a drilling rig. On June 30, 2006, Applied Capital filed its Verified Fourth Amended Complaint, adding Edward L. Presley and his business, New Energy, and served it on them. See Verified Fourth Amended Complaint for Fraud, Negligent Misrepresentation, Unjust Enrichment, Breach of Contract, Violation of the New Mexico Unfair Trade Practices Act, and Civil Conspiracy ("Fourth Complaint"), filed July 5, 2006 (Doc. 120); Amended Certificate, filed July 5, 2006 (Doc. 121).

The other individual Defendants involved in this alleged scheme reside in California and Wyoming; Gibson lives in Idaho. See Fourth Complaint ¶¶ 1-10, at 1-3. The two entities that Applied Capital has sued, Heritage Commercial Sources, Inc. and Grizzly Drilling, Inc., are California and Wyoming corporations, respectively. See Fourth Complaint ¶¶ 6-7, at 2. Applied  Capital is a New Mexico corporation. See Fourth Complaint ¶ 1, at 1.

The New Mexico action seeks a return of Applied Capital's money, together with substantial damages, and is predicated upon various state-law theories of recovery, including fraud, unjust enrichment, violation of the New Mexico Unfair Trade Practices Act, civil conspiracy, and breach of contract. See Fourth Complaint ¶¶ 34-87, at 8-16. Applied Capital states these theories of recovery in the alternative, and seeks entry of a judgment jointly and severally enforceable against all of the Defendants, including Gibson, for $550,000.00, treble damages, punitive damages, costs, both pre- and post-judgment interest, and contractual attorneys' fees against Grizzly Drilling and New Energy. See Fourth Complaint at 16.

On March 28, 2005, Defendant Gary Bellinger filed a Motion to Dismiss (Doc. 16), and on April 19, 2005, Defendants Kirk Voyles and Heritage Commercial filed a Motion to Dismiss for Lack

of Jurisdiction (Doc. 28).  The primary issue in both motions was whether the Court should dismiss the claims against these three defendants for lack of personal jurisdiction.

On April 1, 2005, Gibson, through his counsel Robert J. Avila, filed this motion to dismiss on grounds of improper venue or, in the alternative, to stay proceedings pending resolution of state litigation in California.  See Defendant Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceeding ("Gibson's Motion"), filed April 1, 2005 (Doc. 17); Memorandum Brief in Support of Defendant Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceeding ("Memo"), filed April 1, 2005 (Doc. 18).   In the motion, Gibson argues that there was no basis for venue in New Mexico. See Gibson's Motion ¶ 3, at 1.  Second, he contends that he is not subject to New Mexico's long-arm statute.  See Gibson's Motion ¶ 6, at 2.  Third, Gibson contends that the Court should not allow Applied Capital to sue Legato Staffing and Integration Services, of which Gibson is a director, in both California, and  in New Mexico at the same time. See Gibson's Motion ¶¶ 10-11, at 2-3.

On April 18, 2005, Applied Capital filed the Plaintiff's Consolidated Response to Defendant Bellinger's and Gibson's Motions to Dismiss.  See Doc. 25.  Applied Capital's response was devoted primarily to the grant of personal jurisdiction.  See Plaintiff's Consolidated Response to Defendants Bellinger's and Gibson's Motions to Dismiss ("Plaintiff's Consolidated Response"), filed April 18, 2005 (Doc. 25).   In a footnote, however, Applied Capital argued that the Court has venue under 28 U.S.C. § 1391(a)(2).  See Plaintiff's Consolidated Response at 9 n.3.

Gibson filed a Motion to Strike Exhibits to Plaintiff's Consolidated Response to Defendants' Motion to Dismiss.  See Defendant Gibson's Motion to Strike Exhibits to Plaintiff's Consolidated Response to Defendants' Motions to Dismiss ("Motion to Strike"), filed May 4, 2005 (Doc. 35).

Gibson requested the Court to strike Applied Capital's exhibits containing excerpts from depositions in the California action or, in the alternative, to continue proceedings until Gibson can identify all of Applied Capital's discovery and take depositions of Applied Capital's agents and others who were involved in this matter.  See Motion to Strike ¶ 12, at 3.

On November 11, 2005, Gibson filed a Notice of Bankruptcy.  See Doc. 67.  The Notice advised the Court that Gibson had filed a chapter 7 bankruptcy proceeding on October 13, 2005, in the United States Bankruptcy Court for the District of Idaho. See Notice of Bankruptcy, filed November 11, 2005 (Doc. 67).  Gibson also stated that the Idaho Bankruptcy Court had not entered an order allowing this federal action in New Mexico to proceed against the Defendants and that no further action could be taken pursuant to 11 U.S.C. § 362.  See id.  On December 12, 2005, Gibson filed another Notice of Bankruptcy in this Court, again stating that the Bankruptcy Court in Idaho had not entered any order allowing this action to proceed against the Defendants and that no further action can be taken pursuant to 11 U.S.C. § 362.  See Doc. 69.

On November 23, 2005, the Court held a hearing on Bellinger's, Voyles', and Heritage Commercial's motions to dismiss. See Clerk's Minutes, filed November 25, 2005 (Doc. 68).  The Court found that: (i) Applied Capital has made a prima facie showing, for purposes of these motions, that a conspiracy to defraud Applied Capital existed, that the Defendants were members of the conspiracy and knowingly participated in such conspiracy, and that the co-conspirators committed tortious acts pursuant to the conspiracy in New Mexico; (ii) New Mexico's long-arm statute encompasses the Defendants' actions; (iii) the Defendants, through their tortious conduct, purposefully availed themselves of the privilege of conducting activities within New Mexico, thus invoking the benefits and protections of New Mexico's laws; and (iii) exercise of jurisdiction over

these Defendants does not offend traditional notions of fair play and substantial justice, and is thus reasonable.  See Order, filed March 27, 2006 (Doc. 101).  The Court therefore concluded that it had personal jurisdiction over Bellinger, Voyles, and Heritage.  See id.  The Court then denied these three Defendants' motions to dismiss.  See id.

On March 31, 2006, Applied Capital filed a Notice of Filing (Doc. 104), notifying the Court and the parties that the Idaho Bankruptcy Court had lifted the automatic stay that previously applied to Applied Capital's Complaint against Francis in this action.  See Notice of Filing at 1.  Applied Capital attached to its Notice copies of the Bankruptcy Court's March 14, 2006 Order and Memorandum Decision in Cause No. 05-43076 lifting the stay.  See Notice of Filing, filed March 31, 2006, Exhibit 1, Order ("Bankruptcy Order").  Applied Capital stated that, on the basis of this ruling, it understood it may proceed with discovery and otherwise against Gibson in this New Mexico action.  See Notice of Filing at 1, filed March 31, 2006 (Doc. 104).

In the Bankruptcy Court's memorandum opinion, the court stated that Gibson's schedules disclose that, after excluding exempt property, no funds will likely be available for distribution to unsecured creditors.  See Bankruptcy Order at 2-3.  The Bankruptcy Court also noted that Gibson was currently unrepresented in the New Mexico action.  See Bankruptcy Order at 4.  On January 20, 2006, the Court granted an Order Approving Withdrawal of Robert J. Avila, P.C. as Counsel for Defendant Francis Gibson.  See Doc. 93.  This Court noted that Gibson had not filed any objection to Mr. Avila's motion requesting withdrawal and stating where future pleadings should be sent.  See id.

In its memorandum opinion, the Bankruptcy Court stated: "It would be far better to adjudicate all of the state law claims against all culpable defendants , rather than attempt to carve out

the single issue of fraud against one defendant to litigate in this Court." Bankruptcy Order at 7.  The

Bankruptcy Court concluded: "Only the New Mexico court can adequately adjudicate and apportion

damages among those found responsible." Id. at 8.  The Court also stated: "A New Mexico district

court is better suited to discern and apply the laws of that state." Id. at 9.

On April 26, 2006, the Court set a hearing on Gibson's pending motion to dismiss and motion

to strike for May 11, 2006.  See Notice Vacating and Rescheduling Motion Hearing, filed April 26,

2006 (Doc. 109).  The Court sent notices to the addresses that Applied Capital provided and to those

received for Gibson.

At the hearing on May 11, 2006, Mr. Hank Bohnhoff appeared for Applied Capital, but no

one, including Gibson, appeared for Gibson. See Transcript of Hearing (taken May 11, 2006)("Tr.").[1]

The Court called the case and noted that Gibson was not present. See Tr. at 2:12-18 (Court). The

Court recited the history of the notice for the record.      See  Tr. at 2:1-4:1(Court, Sanchez &

Bohnhoff).  The Court noted that it did not have telephone numbers for Gibson and that he had not

asked to appear telephonically. See Tr. at 3:14-20 (Court). The Court asked Mr. Bohnhoff whether

he had any reason to believe that Gibson would appear, and Mr. Bohnhoff stated that he did not have

any reason to believe that Gibson would appear and did not expect Gibson to appear.   See Tr. at

3:21-4:1 (Court & Bohnhoff).

The Court then proceeded to take up Gibson's Motion to Strike.  See Tr. at 4:2-4 (Court).

The Court interpreted Gibson's motion as containing a request that the Court not consider his Motion

to Dismiss until he had time to do discovery.  See Tr. at 4:21-5:9 (Court).  While the Court stated

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that it was not inclined to create a special time of discovery for jurisdictional issues alone before merits discovery, it was inclined to allow Gibson to do his jurisdictional discovery at the same time as merits discovery.  See Tr. at 4:2-5:9 (Court).  The Court suggested to Applied Capital that the Court not consider Gibson's motions to dismiss until after he has been given an opportunity to do discovery on jurisdictional issues; that Gibson's jurisdictional discovery be concurrent with merits discovery; that the Court allow Gibson to bring back up the merits of his motion to dismiss when he wants to do so; that the Court allow discovery; and/or that the Court allow Gibson to file a reply to say anything he could or desired.  See Tr. at 4:2-5:9 (Court).

The Court asked Applied Capital's counsel for his thoughts on the Court's proposal.  See Tr. at 5:6 (Court).  Applied Capital opposed the proposal and argued in opposition to the motion. See Tr. at 5:10-21 (Bohnhoff).  Applied Capital contended that Gibson had not made a prima facie showing that discovery was needed and appropriate.  See Tr. at 5:15-17 (Bohnhoff).  Applied Capital stated that, if the Court denies a motion for lack of jurisdiction, a defendant is always free to renew the motion at a later date, so it was not sure the Court needed to make special mention of that ability. See Tr. at 17-21 (Bohnhoff).  Applied Capital also did not believe the Court accurately understood what Gibson was requesting.  See Tr. at 5:22-6:2 (Court & Bohnhoff).

Applied Capital pressed the Court to address the venue issue raised in Gibson's motion.  See Tr. at 6:3-8 (Bohnhoff).  The Court then denied Gibson's Motion to Strike Exhibits to Plaintiff's Consolidated Response to Defendants' Motion (Doc. 35) to the extent it sought the Court to strike exhibits and proceeded to hear the motion to dismiss, either on jurisdiction or venue.  See Tr. at 6:9-25 (Court).  The Court stated that it would think further about whether to rule now or hold up ruling on Gibson's motion to dismiss if he did not want it ruled on, but would proceed to hear arguments

on it.  See Tr. at 6:20-25 (Court).  The Court noted that Gibson was not entitled to discovery and did not think there was a conversion issue under rule 56(f), but stated that it might give Gibson some control over the timing of the ruling on his motion to dismiss if Gibson did not want it decided now. See Tr. at 6:20-25 (Court).  The Court stated it might just leave the motion pending for a time. See Tr. at 6:21-22 (Court).  The Court then proceeded to hear Gibson's motion to dismiss.  See Tr. at 6:23-25 (Court).

Applied Capital stated that it did not oppose the Court deferring a ruling on the remainder of Gibson's motion to strike and proceeded to argue in opposition to the motion to dismiss.  See Tr. at 7:1-3.  Applied Capital relied specifically on four cases: (i) Master Tech Products, Inc. vs. Smith, 181 F.Supp.2d 910 (N.D. Ill. 2002); (ii) New Life Brokerage Servs., Inc. v. Cal-Surance Associates, 222 F. Supp.2d 94 (D. Me. 2002); (iii) Sacody Technologies v. Avant, Inc., 862 F. Supp. 1152 (S.D.N.Y. 1994); and (iv) Bradley v. Vail, No. CIV 95-1038 (D.N.M. April 2, 1995)(Conway, J.).

After hearing argument, the Court stated that it was inclined to agree that venue was proper in the District of New Mexico, and that it was inclined to deny the motion to dismiss on both venue and jurisdiction grounds.  See Tr. at 10:17-18 (Court).  Accordingly, the Court stated it was inclined to deny the motion to dismiss, deny in part the motion to strike, and take under advisement that part of the motion to strike that requested the Court defer relying on the motion to dismiss.  See Tr. at 10:18-24 (Court).

On May 19, 2006, the Court entered an Order on the motion to strike.  See Order, filed May 19, 2006 (Doc. 111).  The Court denied the motion to strike in part and granted the motion in part. See Order at 2, filed May 19, 2006 (Doc. 111).   The Court confirmed that it would not strike the depositions attached to Applied Capital's response to Gibson's motion to dismiss. See id.

The Court also stated, however, that Gibson could defer argument and the filing of a supplemental reply on his motion to dismiss until he has conducted discovery on the jurisdictional issues. See id. The Court noted that Applied Capital did not oppose the Court deferring ruling on Gibson's motion to dismiss. See Order at 2 n.1, filed May 19, 2006 (Doc. 111). The Court also stated that discovery on the jurisdictional issues would occur concurrently with merits discovery. See Order at 2, filed May 19, 2006 (Doc. 111).

In its Order, the Court further stated that, if Gibson would still like to defer argument and supplemental reply on his motion to dismiss, and would like the Court to defer ruling on his motion to dismiss until after he had an opportunity to engage in discovery, he must inform the Court that such an approach was his desire by Tuesday, May 30, 2006. See id. The Court stated that, if Gibson did not inform the Court by May 30, 2006, the Court would rule on his motion to dismiss. See id.

On May 13, 2005, Gibson filed his Reply to the Plaintiff's Consolidated Response. See Reply to Plaintiff's Consolidated Response to Defendant Gibson's Motion to Dismiss (Gibson's Reply), filed May 13, 2005 (Doc. 41). In his Reply, Gibson argues that the Plaintiff is engaged in forum shopping. See Gibson's Reply at 1. He also contends that he cannot proceed without the discovery from the pending California case. See id. at 2. Gibson also argues that his contacts with New Mexico are insufficient under both the New Mexico long-arm statute and the Due Process Clause. See id. at 2-7. Lastly, he asserts that he does not concede that venue is proper in the District of New Mexico. See id. at 6. He argues that a court must look to the relevant activities of the defendant, not the plaintiff in assessing venue. See id. (citing Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) (stating that "[w]hile the present venue statute was certainly intended to expand the number of venues available to a plaintiff, we are reluctant to impute to Congress an intent to abandon altogether the protection

of defendants as a relevant consideration in venue matters. We think it far more likely that by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.").

## STANDARD FOR DETERMINING RULE 12(b)(2) MOTIONS

Motions to dismiss under rule 12(b)(2) of the Federal Rules of Civil Procedure test the plaintiff's theory of jurisdiction as well as the facts supporting the jurisdiction. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999). Rule 12(b)(2) concerns lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). In determining jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated. See id. at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due process requirements. See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J).

At this stage of the proceedings, it is not for the court to resolve disputed facts. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

-10-

## LAW REGARDING PERSONAL JURISDICTION

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."        Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004)(citation and internal quotations omitted). See Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir.1995) (citing Rambo v. Am. So. Ins. Co., 839 F.2d at 1416). The United States Court of Appeals for the Tenth Circuit in OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086 (10th Cir. 1998), summarized the constitutional analysis for personal jurisdiction:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts ties, or relations. Therefore, a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state. The requirement that minimum contacts be present protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar.
>
> * * * *
>
> The minimum contacts standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. However,  because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.

OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d at 1090-91 (internal citations and

quotations omitted).

1.      **New Mexico Long-Arm Statute.**

The forum state's law applies in federal diversity actions to determine if personal jurisdiction exists. See Erie R. Co. v. Tompkins, 304 U.S. 64, 77-80 (1938); Benton v. Cameco Corp., 375 F.3d at 1075 (10th Cir. 2004). In this matter, the Court first looks to New Mexico personal-jurisdiction law to determine if personal jurisdiction exists. New Mexico's long-arm statute is designed to ensure a close nexus between a non-resident defendant's jurisdictional activities and the cause of action against which he must defend. See Winward v. Holly Creek Mills, Inc., 83 N.M. 469, 471-72, 493 P.2d 954, 956-57 (1972). New Mexico's long-arm statute provides, in pertinent part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> (1) the transaction of any business within this state;
>
> * * * *
>
> (3) the commission of a tortious act within this state[.]
>
> * * * *
>
> C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

N.M.S.A. 1978 § 38-1-16A(1),(3); (C). The court "search[es] for the outer limits of what due process permits, because New Mexico's long-arm statute will extend as far as the constitution allows." Santa Fe Technologies. v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d 1221, 1228 (Ct. App. 2001) (internal quotations omitted).

The New Mexico courts have held that long-arm statutes are in derogation of the common law and that, hence, they are to be strictly construed. See Worland v. Worland, 89 N.M. 291, 295,

-12-

551 P.2d 981, 985 (1976).  As the Honorable Bruce Black, United States District Judge, has stated:

> The New Mexico courts use a three-step test to decide whether personal jurisdiction exists over nonresident, out-of-state defendants: (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.

Rogers v. 5-Star Mgmt., Inc., 946 F. Supp. 907, 910 (D.N.M. 1996)(Black, J.)(quoting State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 748 P.2d 986, 987 (1989)).

"[A]s the first and third step of this test have been repeatedly equated with the due process standard of minimum contacts, the necessity of a technical determination of whether the non-resident committed an act enumerated by the long-arm statute has evaporated."  Santa Fe Technologies. v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d 1221, 1228 (Ct. App. 2001) (citations and internal quotations omitted).  For personal jurisdiction over a nonresident defendant to exist in New Mexico, "a plaintiff must allege an occurrence that falls within the long-arm statute, and the court must find the requisite minimum contacts to comport with due process."   Santa Fe Technologies v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d at 1228 (citations and internal quotations omitted).

"For purposes of the long-arm statute, a tortious act can occur in New Mexico when the actual harmful act originates outside the state, but the injury itself occurs inside New Mexico.  This is the place-of-the-wrong rule[ . . . ]  The place of the wrong is the location of the last act necessary to complete the injury.  A tort is not complete until the plaintiff suffers a cognizable injury."  Santa Fe Technologies v. Argus Networks, 2002-NMCA-030, ¶ 15, 42 P.3d at 1229 (citations and internal quotations omitted).

## 2.   **Conspiracy as a Tortious Act**.

The Court of Appeals for the Tenth Circuit has not yet decided whether allegations of

conspiracy can be enough to confer personal jurisdiction over nonresident defendants, but it has examined "whether the acts of a nonresident conspirator, which establish sufficient contacts with the forum state to make that conspirator amenable to service under that state's long arm statute, are likewise sufficient to establish personal jurisdiction over nonresident coconspirators." American Land Program, Inc. v. Bonaventura Uitgeers Maatschappij, N.V., 710 F.2d 1449, 1454 (10th Cir. 1983). The long-arm statute at issue in that case was similar to New Mexico's long-arm statute, because a basis of jurisdiction was "[t]he cause of any injury within this state whether tortious or by breach of warranty." American Land Program, Inc. v. Bonaventura Uitgeers Maatschappij, N.V., 710 F.2d at 1451 (quoting Utah Code Ann. § 78-27-24 (1977)). The Tenth Circuit noted that "[m]ere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." American Land Program, Inc. v. Bonaventura Uitgeers Maatschappij, N.V., 710 F.2d at 1454 (quoting Baldridge v. McPike, 466 F.2d 65, 68 (10th Cir. 1972)).

Under New Mexico law, "[a] civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 F.3d 201, 207 (internal quotations and citations omitted). The purpose of a civil-conspiracy claim is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." Seeds v. Lucero, 2005-NMCA-067, ¶ 12, 113 P.3d 859, 862 (internal quotations and citations omitted). In Seeds v. Lucero, the New Mexico Court of Appeals listed the elements of a civil conspiracy and compared a civil conspiracy to a criminal conspiracy:

> Civil conspiracy consists of showing [i] that a conspiracy between two or more individuals existed; [ii] that specific wrongful acts were carried out by the defendants

-14-

pursuant to the conspiracy; and [iii] that the plaintiff was damaged as a result of such acts. Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators. Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense.

Id. ¶ 18, 113 P.3d at 863-64 (internal quotations and citations omitted). "[A]n agreement by itself, without an independent, unlawful act, is not an improper means." Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 F.3d at 207.

Santa Fe Technologies v. Argus Networks, 2002 -NMCA- 030, ¶ 34, 42 P.3d at 1233-34. Nevertheless, the Supreme Court of New Mexico has "alluded to conspiracy as a viable basis of personal jurisdiction", Sanchez v. Church of Scientology, 115 N.M. 660, 663, 857 P.2d 771, 774 (1993). The New Mexico Court of Appeals has also found that conspiracy may be a constitutional basis for exercising personal jurisdiction over a defendant, see Santa Fe Technologies v. Argus Networks, 2002 -NMCA- 030, ¶ 34, 42 P.3d at 1233-34. The New Mexico Court of Appeals agrees that "a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts of effects in the forum can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws." Santa Fe Technologies v. Argus Networks , 2002 -NMCA- 030, ¶ 34, 42 P.3d at 1233-34. The Court is convinced that the Supreme Court of New Mexico, if confronted with the issue, would find conspiracy an act which satisfies New Mexico's long-arm statute on the basis of tortious act within New Mexico. See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir.2001). The Supreme Court of New Mexico and the New Mexico Court of Appeals have repeatedly stated that New Mexico's long-arm statute extends as far as due process allows. See Santa Fe Technologies. v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d 1221, 1228 (Ct. App. 2001); Smith v. Halliburton

Co., 118 N.M. 179, 185, 879 P.2d 1198, 1204 (Ct. App. 1994).  Accordingly, the Court interprets

New Mexico's long-arm statute to permit personal jurisdiction over non-resident defendants to the

fullest extent allowed under the Due Process Clause.  Santa Fe Technologies v. Argus Networks ,

2002 -NMCA- 030, ¶ 13, 42 P.3d at 1228.

### 3.      Constitutional Analysis.

Even if allegations of conspiracy can satisfy the requirements of New Mexico's long-arm

statute, the Court must also make certain that exercise of personal jurisdiction in a particular case is

consistent with due process.  A defendant must have minimum contacts with the forum state.  Brining

a nonresident into the forum courts must conform with constitutional notions of fair play and

substantial justice.

### a.      Minimum Contacts.

To establish that a defendant has minimum contacts with the forum state, "there must be some

act by which the defendant purposefully avails itself of the privilege of conducting activities within

the forum State, thus invoking the benefits and protections of its laws."  Bell Helicopter Textron, 385

F.3d 1291, 1296 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  The purposeful availment

requirement "precludes personal jurisdiction as the result of random, fortuitous, or attenuated

contacts."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  "Purposeful

availment requires actions by the Defendant which create a substantial connection with the forum

state."  OMI Holdings v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092 (quoting Asahi Metal Indus.

Co. v. Superior Court of Cal., 480 U.S. 102, 109 (1987)).  The court therefore "must determine

whether the defendant purposefully directed its activities at residents of the forum, and whether the

plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial

connection with the forum state."  OMI Holdings v. Royal Ins. Co. of Canada 149 F.3d at 1091

(quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. at 109 (1987)).  The court must

look at the quantity and quality of the defendants' contacts with New Mexico to determine whether

the assertion of this court's jurisdiction over these defendants comports with due process.

### b.     Traditional Notions of Fair Play and Substantial Justice.

In determining traditional notions of fair play and substantial justice, the court must decide

"whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts

is reasonable' in light of the circumstances surrounding the case."  Benton v. Cameco Corp., 375 F.3d

1070, 1078 (10th Cir. 2004)(internal quotation omitted).  The court analyzes: (i) the burden on the

defendant; (ii) the forum state's interest in resolving the dispute; (iii) the plaintiff's interest in receiving

convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (v) the shared interest of the several states in furthering

fundamental social policies.   See id.  The purpose of considering the above factors is to place

"emphasis on reasonableness is the understanding that the burden on the defendant, while always a

primary concern, will in an appropriate case be considered in light of other relevant factors."

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).  "Thus, the Due Process

Clause "does not contemplate that a state may make binding a judgment in personam against an

individual or corporate defendant with which the state has no contacts, ties, or relations."  Id. at 294

(quoting Int'l Shoe Co. v. Washington, 326 US. 310, 319 (1945).

### LAW REGARDING VENUE

Venue is defined as the appropriate district court in which to file an action.  See N.L.R.B. v.

Line, 50 F.3d 311, 314 (5th Cir. 1995).  The purpose of venue is to assure that lawsuits are filed in

appropriately convenient courts for the matters raised and for the parties involved in the action. See

Leroy v. Great Western United Corp., 443 U.S. 173, 185 (1979).  Venue should not be confused with

subject-matter jurisdiction, see Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006), nor

personal jurisdiction, see Leroy v. Great Western United Corp., 443 U.S. 173, 185 (1979) ( "The

question of personal jurisdiction, which goes to the court's power to exercise control over the parties,

is typically decided in advance of venue, which is primarily a matter of choosing a convenient

forum."); 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3801 (2007).

Any rights conferred by the federal venue statutes are waivable because no constitutional rights are

implicated by them.  See Leroy v. Great Western United Corp., 443 U.S. 173, 183-87 (1979).  "To

the extent that they are relevant, the laws relating to venue give added protection to defendants

beyond those that are provided by the statutory and constitutional prerequisites of personal

jurisdiction."  14D C. Wright, A. Miller & E. Cooper, supra § 3801.

> 28 U.S.C. § 1391(a) governs venue for cases founded only on diversity of citizenship:
> A civil action wherein jurisdiction is founded only on diversity of citizenship may,
> except as otherwise provided by law, be brought only in (1) a judicial district where
> any defendant resides, if all defendants reside in the same State; (2) a judicial district
> in which a substantial part of the events or omissions giving rise to the claim occurred,
> or a substantial part of property that is the subject of the action is situated, or (3) a
> judicial district in which any defendant is subject to personal jurisdiction at the time
> the action is commenced, if there is no district in which the action may otherwise be
> brought.

28 U.S.C. § 1391(a).  "For purposes of venue under this chapter, a defendant that is a corporation

shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the

time the action is commenced."  28 U.S.C. § 1391(c). § 1391(a)(3) is a "fall-back provision" used

where "venue will be unavailable under § 1391(a)(1)." Algodonera De Las Cabezas, S.A. v. Am.

Suisse Capital, Inc., 432 F.3d 1343, 1345 (11th Cir. 2005) (internal quotations and citations omitted).

-18-

The Tenth Circuit has noted that

> There have been ... occasional gaps in the venue laws, i.e., cases in which the federal courts have jurisdiction but there is no district in which venue is proper. One such gap arose in connection with cases involving multiple plaintiffs and defendants. Venue was fixed at the residence of the defendant . . . . When there were multiple . . . defendants, the district of residence for venue purposes was the districts where . . . all the defendants reside. If they resided in different districts then there was no proper venue. In 1966 Congress acted to close the gap with a provision authorizing suit where 'the claim arose,' which in most cases provides a proper venue even in multiple-party situations. The development supports the view that Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other. Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap.

Monument Builders v. Am. Cemetery Ass'n, 891 F.2d 1473, 1479 (10th Cir. 1989) (quoting Brunette Mac. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 710 n. 8 (1972)). The current venue statutes were enacted to prevent this situation, especially in multi-party situations.  See Monument Builders v. Am. Cemetery Ass'n, 891 F.2d at 1479.

The proper venue for a matter under 28 U.S.C. § 1391(a)(2) can be in any district "in which a  substantial part of the events or omissions giving rise to the claim occurred."          28  U.S.C. §1391(a)(2). See Monument Builders v. Am. Cemetery Ass'n, 891 F.2d at 1478-79 (holding venue was proper in two different districts because the locus of the events or omissions giving rise to the claim of illegal conduct adversely impacting consumer welfare was within the relevant market that happened to be divided by the Kansas/Missouri state line).   Anaeme v. Florida, 169 Fed.Appx. 524, 528 (10th Cir. 2006) (holding that venue was not appropriate in the District of New Mexico where the alleged events giving rise to the claims occurred in Florida).   A defendant's communications directed at the district where venue is sought by the plaintiff may constitute the events or omissions that satisfy the venue requirements of 28 U.S.C. § 1392(a)(2). See Master Tech. Products, Inc. v.

<u>Smith</u>, 181 F.2d 910, 914 (N.D. Ill. 2002) (holding that venue was proper in the Northern District of Illinois where the defendant called and sent confidential agreements to Illinois, even though the defendant was never personally in Illinois); <u>New Life Brokerage Servs. v. Cal-Surance Ass'n</u>, 222 F.Supp.2d 94, 109 (D.Me. 2002)(holding that venue was proper when communications were directed to the District of Maine by the defendant about insurance coverage in a tort and contract suit brought by plaintiff after its insurance claim was not covered under the policy the insurance broker recommended and procured for it); <u>Sacody Technologies, Inc. v. Avant, Inc.</u>, 862 F.Supp. 1152, 1157 (S.D.N.Y. 1994) (holding that venue was proper in the Southern District of New York when defendants' dealings with the plaintiff took place over the telephone, and by correspondence and facsimile, in Massachusetts and New York). The substantiality requirement of 28 U.S.C. 1391(a)(2) "is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." <u>Fodor v. Hartman</u>, No. 05-CV-02539-PSF-BNB, 2006 WL 1488894 at *4 (D. Colo. May 30, 2006) (Figa, J.) (holding that plaintiff's averments that the defendant may have made telephone calls to him in Colorado, or sent him mailings or email relating to unspecified business matters were not substantial, because the court was unable to determine if "these are acts or omissions that give rise to plaintiff's claims, or are merely tangential contacts."); <u>Myelle v. Am. Cyanamid Co.</u>, Nos. CIV. A. 92-5243, CIV. A. 92-6136, CIV. A. 93-323, 1993 WL 93422 at *6 (E.D. Pa. Apr. 1, 1993) (Vanartsdalen, J.)(holding that venue was improper in Pennsylvania where the "substantial part of the events giving rise to the claims alleged herein occurred in South Carolina" and those events " ensuing relevant evidence therefrom, irrefutably constitute the crux of plaintiffs' claims.").

# ANALYSIS[2]

The Court has already dealt with the personal jurisdiction issue for many of the Defendants, and there does not appear to be any reason to distinguish Gibson from the other alleged co-conspirators.  Moreover, a substantial amount of the alleged activities and omissions occurred in New Mexico.  Finally, Applied Capital has dismissed the California case, thus mooting any request to dismiss or stay for a parallel proceeding.

## I.   THE COURT HAS PERSONAL JURISDICTION OVER GIBSON BECAUSE HE HAS PURPOSEFULLY AVAILED HIMSELF OF THE PRIVILEGE OF CONDUCTING ACTIVITIES IN NEW MEXICO BY ENGAGING IN A CONSPIRACY CENTERED IN NEW MEXICO.

What case law is available suggests that, if the plaintiff makes a prima facie showing of a conspiracy among the defendants to commit a tort in a state, the state has personal jurisdiction over the individual defendants.  Here, Applied Capital has made a sufficient prima facie showing that the Defendants intended to defraud Applied Capital in New Mexico by sending a series of facsimiles, references, telephone calls, and documents into the state in hopes of inducing Applied Capital to send them money.  Moreover, the Court has already determined that it has personal jurisdiction over Bellinger, Voyles, and Heritage Commercial, and it does not appear by said reason to distinguish Gibson from the other Defendants on the basis of personal jurisdiction.

---

[2]Given that Gibson did not expressly contact the Court about the motion after conducting discovery and affirmatively filed motions to dismiss based on a settlement, it may be that Gibson has waived his personal jurisdiction and venue arguments.  See Harbison v. Johnston, 2001 -NMCA- 05, ¶ 10, 28 P.3d 1136, 1140 (noting that "[w]hen a party requests affirmative relief prior to a ruling on his objections to the court's personal jurisdiction, he waives all objections to the court's in personam jurisdiction." (internal quotations omitted)).

A.     **APPLIED CAPITAL HAS MADE A PRIMA FACIE SHOWING OF A CONSPIRACY AMONG THE DEFENDANTS TO COMMIT A TORT IN NEW MEXICO**

The undenied allegations in Applied Capital's Complaint, see Fed. R. Civ. P. 8(b)(6); the undenied requests for admission, see Fed. R. Civ. P. 36(a)(3); and the documents and deposition testimony attached to Applied Capital's summary judgment papers demonstrate that, as a matter of undisputed material fact, Gibson, acting on behalf of Legato, conspired with Presley and Herman (acting on behalf of New Energy), Scogin (acting on behalf of Grizzly), Ambrose, Voyles, and Heritage Commercial Services to defraud Applied Capital out of $550,000.00 in the rig transaction.

In this case, there were two companies with Gibson acting as the link between them. First, Gibson agreed with Presley, Herman, and Scogin to fraudulently induce Applied Capital into entering the rig transaction and also to breach the Closing Agreement; the $550,000.00 wire transfer from Applied Capital would be used not to buy, as represented, a drilling rig from Grizzly, but rather to make payments to the co-conspirators and fund the so-called HYIP program.  The deposition testimony of Ed Presley provides the most detailed explanation of the scheme.  See Presley Depo. at 15:18-19:24.  Second, Gibson agreed with Ambrose and Voyles, the bogus "credit references," that the references would provide false information about past transactions in which Legato had purchased equipment and other goods on credit.  Gibson's request to and agreement with these individuals to defraud Applied Capital is evident from the fact that he was asking them to confirm commercial transactions that everyone -- involving Gibson -- acknowledges did not occur.  See Fourth Complaint, Exhibit 2, Letter from HSBC to Francis Gibson (dated April 27, 2004); Fourth Complaint, Exhibit 4, Letter from Francis Gibson to Jim Scott (dated May 12, 2004).

In conclusion, the undisputed facts show that Gibson, acting on behalf of Legato, conspired

with Presley and Herman, acting on behalf of New Energy; Scogin, acting on behalf of Grizzly Drilling; Ambrose and; Voyles, acting on behalf of Heritage Commercial Services to defraud Applied Capital out of $550,000.00 in the rig transaction and breach the Closing Agreement.

Since the Court finds that Gibson and his co-defendants engaged in a civil conspiracy against Applied Capital, personal jurisdiction is appropriate over him under New Mexico's long-arm statute. See Santa Fe Technologies v. Argus Networks, 2002 -NMCA- 030, ¶¶ 13, 34, 42 P.3d at 1228, 1233 (Ct. App. 2001) (holding that personal jurisdiction may be constitutionally based upon conspiracy so long as it is not based upon random or fortuitous contacts nor the unilateral acts of a third party and that some of the inquiry under the New Mexico long-arm statute may be equated with the due process standard of minimum contacts). "In a conspiracy, an individual's actions in furtherance of the conspiracy are not unilateral because conspiratorial acts have at their foundation an agreement and the involvement of other co-conspirators." Santa Fe Technologies v. Argus Networks, 2002 -NMCA- 030, ¶¶ 34, 34, 42 P.3d at 1234.

> **B.** **THE COURT HAS ALREADY DETERMINED THAT IT HAS PERSONAL JURISDICTION OVER BELLINGER, VOYLES, AND HERITAGE COMMERCIAL AND THERE DOES NOT APPEAR TO BE A SOUND REASON FOR DISTINGUISHING GIBSON**

The Court has already determined, in deciding Bellinger's, Voyles', and Heritage Commercial's motions to dismiss, that Applied Capital has made a prima facie showing, for purposes of these motions, that a conspiracy to defraud Applied Capital existed, that the Defendants were members of the conspiracy and knowingly participated in such conspiracy, and that the co-conspirators committed tortious acts pursuant to the conspiracy in New Mexico. See Order at 1, filed March 27, 2006 (Doc. 101). The Court has already concluded that New Mexico's long-arm statute encompasses the Defendants' actions.    See id.  The Court further ruled that there was sufficient

-23-

evidence that the Defendants, through their tortious conduct, purposefully availed themselves of the privilege of conducting activities within New Mexico, thus invoking the benefits and protections of New Mexico's laws.  See id.

The Court has also concluded that the exercise of jurisdiction over at least Bellinger, Voyles, and Heritage Commercial, does not offend traditional notions of fair play and substantial justice, and is thus reasonable.  See Order at 1-2, filed March 27, 2006 (Doc. 101).  The Court has therefore concluded that it has personal jurisdiction over Bellinger, Voyles, and Heritage Commercial.  See Order at 2, filed March 27, 2006 (Doc. 101). .

The Court has studied the materials presented to the Court and does not see a material difference, for purposes of personal jurisdiction, between Gibson and Bellinger, Voyles, and Heritage Commercial.  If anything, the evidence suggests that Gibson may have been a leader of the conspiracy.  There is evidence that he requested Applied Capital to provide financing for the purchases by Legato Staffing, on which he served as a director, of the drilling rig in Wyoming. Gibson concedes that he sent, by facsimile transmission, credit references to Applied Capital's headquarters in response to Applied Capital's request.  See Fourth Complaint ¶¶ 20-24, at 5; Memorandum in Support of Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendant Francis Gibson on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust Enrichment Claims, filed February 2, 2007 (Doc. 180), Exhibit 1, Deposition of Francis Gibson at  92:15-94:23, 97:7-99:25, 100:12-102:14 (taken December 10, 2004)("Gibson Depo."); Requests for Admission, Nos. 4-5, 7-32; Memorandum in Support of Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendants Edward L. Presley and New Energy Co., LLC on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust

-24-

Enrichment Claims, filed February 2, 2007 (Doc. 182) Exhibit 4, Affidavit of Mark Burkhard ¶ 6, at 3. (executed February 1, 2007).  These representations were false. See id.

It is reasonable and fair to exercise jurisdiction over Gibson under these circumstances, because "the substantial contact with New Mexico through the actions of conspirators in furtherance of a conspiracy can make the exercise of jurisdiction [. . .] reasonable and fair." Id.  The allegations of Gibson's and the other Defendants' fraudulent conduct, and their contacts with New Mexico, is sufficient for the Court to exercise personal jurisdiction over Gibson.

**II.     THIS COURT IS THE PROPER VENUE FOR THIS MATTER BECAUSE GIBSON'S MAIL, FACSIMILE TRANSMISSIONS, AND TELEPHONE CALLS WERE ALL DIRECTED AT THE DISTRICT OF NEW MEXICO AND ARE A SUBSTANTIAL BASIS FOR APPLIED CAPITAL'S CLAIMS.**

The asserted basis for Applied Capital's venue in the District of New Mexico is the allegation that Gibson "purposely directed fraudulent misrepresentations to Applied Capital in New Mexico via mail, facsimile transmissions, and telephone calls."  Fourth Complaint ¶ 12, at 3.  Applied Capital alleges that Gibson, in his capacity as director of Legato Staffing, sent, by facsimile transmission to Applied Capital in response to Applied Capital's requests. See Defendants' Consolidated Response at 8-9.  On May 13, 2004, Gibson sent to Applied Capital, by facsimile transmission , two letters containing detailed representations about six- and seven-figure purchases of inventory and equipment that Legato had made on credit in the recent past.  For example, Gibson represented that Legato had purchased $600,00.00 in loose diamonds and watches from Ambrose or his company, Shine, Inc., in October 2003. See Fourth Complaint ¶¶ 20-24, at 5; Gibson Depo. at 92:15-94:23, 97:7-99:25, 100:12-102:14;  Requests for Admission, Nos. 4-5, 7-32; Burkhard Aff.  ¶ 6, at 3. Gibson contends that, because he is not a resident of New Mexico and, at all times, was acting on behalf of Legato, who is not a named party, there is no basis for venue in the District of New Mexico

under 28 U.S.C. § 1391(b).  See Gibson's Motion ¶ 3, at 1.

Gibson does not explain where else Applied Capital could file this action and secure jurisdiction over all the parties.  Instead, he argues that sending materials to the state, the harm occurring here, and being a co-conspirator with others who sent materials here is not enough to confer venue.  Gibson is wrong on the law and does not take into account the considerable contacts the conspiracy had with New Mexico.

The ultimate injury from the Defendants' alleged business torts occurred in New Mexico because Applied Capital's headquarters is located in New Mexico.  See Fourth Complaint ¶ 1, at 1. Also, the co-conspirators' activities directed at the State are considerable.  Based on the record before the Court, it appears that the Court is the appropriate venue for Applied Capital's case because all of Gibson's actions were directed at Applied Capital, which is incorporated in New Mexico. Because New Mexico was the locus of Gibson's communications, a substantial part of the events or omissions giving rise to the claim occurred in New Mexico.

Gibson argues that venue is improper under 28 U.S.C.  § 1391(a)(2) because the "Tenth Circuit has yet to make a definitive ruling on whether the place of the injury can be equated with the 'substantial part of the events' in allegations of business torts."  Gibson's Reply at 6.  He argues that, under both Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995), and Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371-72 (11th Cir. 2003), "the rule that a tort is not complete until there is an injury does not permit a commercial plaintiff to subvert federal venue requirements by searching for a district in which to reside at the time of the anticipated injury as to obtain venue under 28 U.S.C. § 1391(a)(2)." Gibson's Reply at 6.

The two cases from other circuits are not, however, inconsistent with the Court's ruling in

this case.  The plaintiff's claim in Woodke v. Dahm involved "the defendant's unauthorized removal

of plaintiff's product's identifying marks before reselling the goods."  Woodke v. Dahm, 70 F.3d at

985.  In determining that venue was inappropriate in the Northern District of Iowa, the United States

Court of Appeal for the Eighth Circuit stated that venue was improper because the events giving rise

to the plaintiff's claim did not occur in Iowa — he did not claim that the trademarks were altered in

the Northern District of Iowa.   See Woodke v. Dahm, 70 F.3d at 985. Lastly, the Eighth Circuit

declined to express any opinion on whether the locus of a conspiracy might provide venue. See id.

("A conspiracy is, indeed a wrongful act in itself; but we express now view on whether the locus of

the conspiracy might provide venue because it appears that [the plaintiff] produced no evidence of

such a conspiracy in the court below.").   Jenkins Brick Co. v. Bremer involved a transfer of venue

under 28 U.S.C. § 1404(a).  See id., 321 F.3d at 1368.  The United States Court of Appeal for the

Eleventh Circuit found that venue would have been improper in the transferor district— the Middle

District of Alabama— because none of the conduct giving rise to the plaintiff's claim occurred in the

transferor district.  See Jenkins Brick Co. v. Bremer, 321 F.3d at 1372 (noting that claim involved

alleged violation of noncompete agreement and that: the employment contract was presented to the

defendant in Georgia, that contract was executed in Georgia, and the non-compete agreement portion

of the contract was intended to be performed primarily in Georgia). A substantive part of the events

or omissions giving rise to Applied Capital's claims occurred in the District of New Mexico, unlike

the events involved in both Woodke v. Dahm, 70 F.3d at 985, and Jenkins Brick Co. v. Bremer, 321

F.3d at 1372.[3]

_____

[3]  Given that it has been determined that venue is proper under 28 U.S.C. § 1391(a)(2) the
Court need not decide if venue would also be proper under 28 U.S.C. § 1391(a)(3) and (c).   See
Algodonera De Las Cabezas, S.A. v. American Suisse Capital, Inc., 432 F.3d 1343, 1345 (11th Cir.

### III.     THERE IS NO PARALLEL STATE PROCEEDING THAT WOULD JUSTIFY <u>THE COURT'S ABSTENTION IN THIS MATTER.</u>

One of Gibson's challenges was based on the allegations in Applied Capital's Complaint and on the existence of a pending California case, California Superior Court, Orange County, No. 04CC08379, against Gibson's principal, Legato Staffing.  <u>See</u> Gibson's Motion ¶ 9, at 2.  On April 15, 2005, the original date that Applied Capital's response to the motion to dismiss was due, Applied Capital voluntarily dismissed its California case, No. 04CCO8379, as permitted in Cal. Civ. Proc. Code § 581 (West 1993).  <u>See</u> Plaintiff's Consolidated Response, Exhibit 15.  Gibson's <u>Colorado River</u> abstention argument is moot in light of the dismissal of the California action.  Moreover, the Court is not convinced that the California proceeding was so parallel that it would have, if still pending, justified the Court treating the situation as involving such exceptional circumstances that the Court should exercise its discretion to dismiss or to stay this case, and decline the exercise of federal court jurisdiction. <u>See</u> <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813-16  (1976).

**IT IS ORDERED** that Defendant Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceeding is denied.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel*:

Henry M. Bohnhoff
Bryan J. Davis
Rodey, Dickason, Sloan, Akin
& Robb, P.A.

_____

2005).

-28-

Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Francis Gibson
Hailey, Idaho

     *Defendant pro se*

Michael Alarid, Jr.
The Alarid Law Firm, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant Gary Bellinger*

Gerald Lee Scogin, Jr.
Lawrenceville, Illinois

     *Defendant pro se*

Justin Herman
Pittsburgh, Pennsylvania

     *Defendant pro se*

Robert A. Johnson
Johnson & Nelson, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Kirk Voyles and*
       *Heritage Commercial Services, Inc.*

Brian Ambrose
Laguna Beach, California

     *Defendant pro se*

New Energy Co. LLC
Sheridan, Wyoming

     *Defendant pro se*

Edward Presley
New Energy Co. LLC
Sheridan,Wyoming

    *Defendant pro se*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

APPLIED CAPITAL, INC.,

        Plaintiff,

vs.                                                                 No. CV 05-98 JB/ACT

FRANCIS GIBSON; GARY BELLINGER,
BRIAN AMBROSE, KIRK VOYLES,
HERITAGE COMMERCIAL SERVICES, INC.,
GRIZZLY DRILLING, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on  Defendant  Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceedings, filed April 1, 2005 (Doc. 17).  The Court held a hearing on the motion on May 11, 2006.  The primary issues are: (i) whether the Court should dismiss the Plaintiff Applied Capital, Inc.'s Complaint against Defendant Francis Gibson on grounds of improper venue; and (ii) whether the Court should, in the alternative, stay proceedings pending the results of Applied Capital's California state court litigation against Francis' principal, Legato Staffing and Integration Services, LLC, and other unnamed Defendants.  Because the Court has already determined that it has personal jurisdiction over the parties, and because there is no compelling reason for the court to stay these proceedings, the Court will deny Gibson's motion to dismiss or to stay.

## PROCEDURAL BACKGROUND

On January 28, 2005, Applied Capital commenced an action in this Court alleging that Gibson, along with five other individuals and four related entities, had engaged in a scheme to

defraud Applied Capital into advancing money to be routed through the various entities to facilitate the purchase of a drilling rig. The money disappeared, and there was not a drilling rig. On June 30, 2006, Applied Capital filed its Verified Fourth Amended Complaint, adding Edward L. Presley and his business, New Energy, and served it on them. See Verified Fourth Amended Complaint for Fraud, Negligent Misrepresentation, Unjust Enrichment, Breach of Contract, Violation of the New Mexico Unfair Trade Practices Act, and Civil Conspiracy ("Fourth Complaint"), filed July 5, 2006 (Doc. 120); Amended Certificate, filed July 5, 2006 (Doc. 121).

The other individual Defendants involved in this alleged scheme reside in California and Wyoming; Gibson lives in Idaho. See Fourth Complaint ¶¶ 1-10, at 1-3. The two entities that Applied Capital has sued, Heritage Commercial Sources, Inc. and Grizzly Drilling, Inc., are California and Wyoming corporations, respectively. See Fourth Complaint ¶¶ 6-7, at 2. Applied Capital is a New Mexico corporation. See Fourth Complaint ¶ 1, at 1.

The New Mexico action seeks a return of Applied Capital's money, together with substantial damages, and is predicated upon various state-law theories of recovery, including fraud, unjust enrichment, violation of the New Mexico Unfair Trade Practices Act, civil conspiracy, and breach of contract. See Fourth Complaint ¶¶ 34-87, at 8-16. Applied Capital states these theories of recovery in the alternative, and seeks entry of a judgment jointly and severally enforceable against all of the Defendants, including Gibson, for $550,000.00, treble damages, punitive damages, costs, both pre- and post-judgment interest, and contractual attorneys' fees against Grizzly Drilling and New Energy. See Fourth Complaint at 16.

On March 28, 2005, Defendant Gary Bellinger filed a Motion to Dismiss (Doc. 16), and on April 19, 2005, Defendants Kirk Voyles and Heritage Commercial filed a Motion to Dismiss for Lack

of Jurisdiction (Doc. 28).  The primary issue in both motions was whether the Court should dismiss the claims against these three defendants for lack of personal jurisdiction.

On April 1, 2005, Gibson, through his counsel Robert J. Avila, filed this motion to dismiss on grounds of improper venue or, in the alternative, to stay proceedings pending resolution of state litigation in California.  See Defendant Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceeding ("Gibson's Motion"), filed April 1, 2005 (Doc. 17); Memorandum Brief in Support of Defendant Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceeding ("Memo"), filed April 1, 2005 (Doc. 18).   In the motion, Gibson argues that there was no basis for venue in New Mexico. See Gibson's Motion ¶ 3, at 1.  Second, he contends that he is not subject to New Mexico's long-arm statute.  See Gibson's Motion ¶ 6, at 2.  Third, Gibson contends that the Court should not allow Applied Capital to sue Legato Staffing and Integration Services, of which Gibson is a director, in both California, and  in New Mexico at the same time See Gibson's Motion ¶¶ 10-11, at 2-3.

On April 18, 2005, Applied Capital filed the Plaintiff's Consolidated Response to Defendant Bellinger's and Gibson's Motions to Dismiss.  See Doc. 25.  Applied Capital's response was devoted primarily to the grant of personal jurisdiction.  See Plaintiff's Consolidated Response to Defendants Bellinger's and Gibson's Motions to Dismiss ("Plaintiff's Consolidated Response"), filed April 18, 2005 (Doc. 25).   In a footnote, however, Applied Capital argued that the Court has venue under 28 U.S.C. § 1391(a)(2).  See Plaintiff's Consolidated Response at 9 n.3.

Gibson filed a Motion to Strike Exhibits to Plaintiff's Consolidated Response to Defendants' Motion to Dismiss.  See Defendant Gibson's Motion to Strike Exhibits to Plaintiff's Consolidated Response to Defendants' Motions to Dismiss ("Motion to Strike"), filed May 4, 2005 (Doc. 35).

Gibson requested the Court to strike Applied Capital's exhibits containing excerpts from depositions in the California action or, in the alternative, to continue proceedings until Gibson can identify all of Applied Capital's discovery and take depositions of Applied Capital's agents and others who were involved in this matter.  See Motion to Strike ¶ 12, at 3.

On November 11, 2005, Gibson filed a Notice of Bankruptcy.   See Doc. 67.  The Notice advised the Court that Gibson had filed a chapter 7 bankruptcy proceeding on October 13, 2005, in the United States Bankruptcy Court for the District of Idaho.  See Notice of Bankruptcy, filed November 11, 2005 (Doc. 67).  Gibson also stated that the Idaho Bankruptcy Court had not entered an order allowing this federal action in New Mexico to proceed against the Defendants and that no further action could be taken pursuant to 11 U.S.C. § 362.  See id.  On December 12, 2005, Gibson filed another Notice of Bankruptcy in this Court, again stating that the Bankruptcy Court in Idaho had not entered any order allowing this action to proceed against the Defendants and that no further action can be taken pursuant to 11 U.S.C. § 362.  See Doc. 69.

On November 23, 2005, the Court held a hearing on Bellinger's, Voyles', and Heritage Commercial's motions to dismiss. See Clerk's Minutes, filed November 25, 2005 (Doc. 68).  The Court found that: (i) Applied Capital has made a prima facie showing, for purposes of these motions, that a conspiracy to defraud Applied Capital existed, that the Defendants were members of the conspiracy and knowingly participated in such conspiracy, and that the co-conspirators committed tortious acts pursuant to the conspiracy in New Mexico; (ii) New Mexico's long-arm statute encompasses the Defendants' actions; (iii) the Defendants, through their tortious conduct, purposefully availed themselves of the privilege of conducting activities within New Mexico, thus invoking the benefits and protections of New Mexico's laws; and (iii) exercise of jurisdiction over

-4-

these Defendants does not offend traditional notions of fair play and substantial justice, and is thus reasonable.  See Order, filed March 27, 2006 (Doc. 101).  The Court therefore concluded that it had personal jurisdiction over Bellinger, Voyles, and Heritage.  See id.  The Court then denied these three Defendants' motions to dismiss.  See id.

On March 31, 2006, Applied Capital filed a Notice of Filing (Doc. 104), notifying the Court and the parties that the Idaho Bankruptcy Court had lifted the automatic stay that previously applied to Applied Capital's Complaint against Francis in this action.  See Notice of Filing at 1.  Applied Capital attached to its Notice copies of the Bankruptcy Court's March 14, 2006 Order and Memorandum Decision in Cause No. 05-43076 lifting the stay.  See Notice of Filing, filed March 31, 2006, Exhibit 1, Order ("Bankruptcy Order").  Applied Capital stated that, on the basis of this ruling, it understood it may proceed with discovery and otherwise against Gibson in this New Mexico action.  See Notice of Filing at 1, filed March 31, 2006 (Doc. 104).

In the Bankruptcy Court's memorandum opinion, the court stated that Gibson's schedules disclose that, after excluding exempt property, no funds will likely be available for distribution to unsecured creditors.  See Bankruptcy Order at 2-3.  The Bankruptcy Court also noted that Gibson was currently unrepresented in the New Mexico action.  See Bankruptcy Order at 4.  On January 20, 2006, the Court granted an Order Approving Withdrawal of Robert J. Avila, P.C. as Counsel for Defendant Francis Gibson.  See Doc. 93.  This Court noted that Gibson had not filed any objection to Mr. Avila's motion requesting withdrawal and stating where future pleadings should be sent.  See id.

In its memorandum opinion, the Bankruptcy Court stated: "It would be far better to adjudicate all of the state law claims against all culpable defendants , rather than attempt to carve out

the single issue of fraud against one defendant to litigate in this Court." Bankruptcy Order at 7.  The

Bankruptcy Court concluded: "Only the New Mexico court can adequately adjudicate and apportion

damages among those found responsible."  Id. at 8.  The Court also stated: "A New Mexico district

court is better suited to discern and apply the laws of that state."  Id. at 9.

On April 26, 2006, the Court set a hearing on Gibson's pending motion to dismiss and motion

to strike for May 11, 2006.  See Notice Vacating and Rescheduling Motion Hearing, filed April 26,

2006 (Doc. 109).  The Court sent notices to the addresses that Applied Capital provided and to those

received for Gibson.

At the hearing on May 11, 2006, Mr. Hank Bohnhoff appeared for Applied Capital, but no

one, including Gibson, appeared for Gibson. See Transcript of Hearing (taken May 11, 2006)("Tr.").[1]

The Court called the case and noted that Gibson was not present. See Tr. at 2:12-18 (Court). The

Court recited the history of the notice for the record.        See  Tr.  at  2:1-4:1(Court, Sanchez &

Bohnhoff).  The Court noted that it did not have telephone numbers for Gibson and that he had not

asked to appear telephonically. See Tr. at 3:14-20 (Court). The Court asked Mr. Bohnhoff whether

he had any reason to believe that Gibson would appear, and Mr. Bohnhoff stated that he did not have

any reason to believe that Gibson would appear and did not expect Gibson to appear.   See Tr. at

3:21-4:1 (Court & Bohnhoff).

The Court then proceeded to take up Gibson's Motion to Strike.  See Tr. at 4:2-4 (Court).

The Court interpreted Gibson's motion as containing a request that the Court not consider his Motion

to Dismiss until he had time to do discovery.  See Tr. at 4:21-5:9 (Court).  While the Court stated

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that it was not inclined to create a special time of discovery for jurisdictional issues alone before merits discovery, it was inclined to allow Gibson to do his jurisdictional discovery at the same time as merits discovery.  See Tr. at 4:2-5:9 (Court).  The Court suggested to Applied Capital that the Court not consider Gibson's motions to dismiss until after he has been given an opportunity to do discovery on jurisdictional issues; that Gibson's jurisdictional discovery be concurrent with merits discovery; that the Court allow Gibson to bring back up the merits of his motion to dismiss when he wants to do so; that the Court allow discovery; and/or that the Court allow Gibson to file a reply to say anything he could or desired.  See Tr. at 4:2-5:9 (Court).

The Court asked Applied Capital's counsel for his thoughts on the Court's proposal.  See Tr. at 5:6 (Court).  Applied Capital opposed the proposal and argued in opposition to the motion. See Tr. at 5:10-21 (Bohnhoff).  Applied Capital contended that Gibson had not made a prima facie showing that discovery was needed and appropriate.  See Tr. at 5:15-17 (Bohnhoff).  Applied Capital stated that, if the Court denies a motion for lack of jurisdiction, a defendant is always free to renew the motion at a later date, so it was not sure the Court needed to make special mention of that ability. See Tr. at 17-21 (Bohnhoff).  Applied Capital also did not believe the Court accurately understood what Gibson was requesting.  See Tr. at 5:22-6:2 (Court & Bohnhoff).

Applied Capital pressed the Court to address the venue issue raised in Gibson's motion.  See Tr. at 6:3-8 (Bohnhoff).  The Court then denied Gibson's Motion to Strike Exhibits to Plaintiff's Consolidated Response to Defendants' Motion (Doc. 35) to the extent it sought the Court to strike exhibits and proceeded to hear the motion to dismiss, either on jurisdiction or venue.  See Tr. at 6:9-25 (Court).  The Court stated that it would think further about whether to rule now or hold up ruling on Gibson's motion to dismiss if he did not want it ruled on, but would proceed to hear arguments

-7-

on it.  See Tr. at 6:20-25 (Court).  The Court noted that Gibson was not entitled to discovery and did not think there was a conversion issue under rule 56(f), but stated that it might give Gibson some control over the timing of the ruling on his motion to dismiss if Gibson did not want it decided now. See Tr. at 6:20-25 (Court).  The Court stated it might just leave the motion pending for a time. See Tr. at 6:21-22 (Court).  The Court then proceeded to hear Gibson's motion to dismiss.  See Tr. at 6:23-25 (Court).

Applied Capital stated that it did not oppose the Court deferring a ruling on the remainder of Gibson's motion to strike and proceeded to argue in opposition to the motion to dismiss.  See Tr. at 7:1-3.  Applied Capital relied specifically on four cases: (i) Master Tech Products, Inc. vs. Smith, 181 F.Supp.2d 910 (N.D. Ill. 2002); (ii) New Life Brokerage Servs., Inc. v. Cal-Surance Associates, 222 F. Supp.2d 94 (D. Me. 2002); (iii) Sacody Technologies v. Avant, Inc., 862 F. Supp. 1152 (S.D.N.Y. 1994); and (iv) Bradley v. Vail, No. CIV 95-1038 (D.N.M. April 2, 1995)(Conway, J.).

After hearing argument, the Court stated that it was inclined to agree that venue was proper in the District of New Mexico, and that it was inclined to deny the motion to dismiss on both venue and jurisdiction grounds.  See Tr. at 10:17-18 (Court).  Accordingly, the Court stated it was inclined to deny the motion to dismiss, deny in part the motion to strike, and take under advisement that part of the motion to strike that requested the Court defer relying on the motion to dismiss.  See Tr. at 10:18-24 (Court).

On May 19, 2006, the Court entered an Order on the motion to strike.  See Order, filed May 19, 2006 (Doc. 111).  The Court denied the motion to strike in part and granted the motion in part.  See Order at 2, filed May 19, 2006 (Doc. 111).  The Court confirmed that it would not strike the depositions attached to Applied Capital's response to Gibson's motion to dismiss. See id.

The Court also stated, however, that Gibson could defer argument and the filing of a supplemental reply on his motion to dismiss until he has conducted discovery on the jurisdictional issues. See id. The Court noted that Applied Capital did not oppose the Court deferring ruling on Gibson's motion to dismiss. See Order at 2 n.1, filed May 19, 2006 (Doc. 111). The Court also stated that discovery on the jurisdictional issues would occur concurrently with merits discovery. See Order at 2, filed May 19, 2006 (Doc. 111).

In its Order, the Court further stated that, if Gibson would still like to defer argument and supplemental reply on his motion to dismiss, and would like the Court to defer ruling on his motion to dismiss until after he had an opportunity to engage in discovery, he must inform the Court that such an approach was his desire by Tuesday, May 30, 2006. See id. The Court stated that, if Gibson did not inform the Court by May 30, 2006, the Court would rule on his motion to dismiss. See id.

On May 13, 2005, Gibson filed his Reply to the Plaintiff's Consolidated Response. See Reply to Plaintiff's Consolidated Response to Defendant Gibson's Motion to Dismiss (Gibson's Reply), filed May 13, 2005 (Doc. 41). In his Reply, Gibson argues that the Plaintiff is engaged in forum shopping. See Gibson's Reply at 1. He also contends that he cannot proceed without the discovery from the pending California case. See id. at 2. Gibson also argues that his contacts with New Mexico are insufficient under both the New Mexico long-arm statute and the Due Process Clause. See id. at 2-7. Lastly, he asserts that he does not concede that venue is proper in the District of New Mexico. See id. at 6. He argues that a court must look to the relevant activities of the defendant, not the plaintiff in assessing venue. See id. (citing Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) (stating that "[w]hile the present venue statute was certainly intended to expand the number of venues available to a plaintiff, we are reluctant to impute to Congress an intent to abandon altogether the protection

-9-

of defendants as a relevant consideration in venue matters. We think it far more likely that by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.").

## STANDARD FOR DETERMINING RULE 12(b)(2) MOTIONS

Motions to dismiss under rule 12(b)(2) of the Federal Rules of Civil Procedure test the plaintiff's theory of jurisdiction as well as the facts supporting the jurisdiction. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999). Rule 12(b)(2) concerns lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). In determining jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated. See id. at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due process requirements. See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J).

At this stage of the proceedings, it is not for the court to resolve disputed facts. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

-10-

## LAW REGARDING PERSONAL JURISDICTION

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."      Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004)(citation and internal quotations omitted). See Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir.1995) (citing Rambo v. Am. So. Ins. Co., 839 F.2d at 1416). The United States Court of Appeals for the Tenth Circuit in OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086 (10th Cir. 1998), summarized the constitutional analysis for personal jurisdiction:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts ties, or relations. Therefore, a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state. The requirement that minimum contacts be present protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar.
>
> * * * *
>
> The minimum contacts standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. However, because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.

OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d at 1090-91 (internal citations and

quotations omitted).

### 1.      New Mexico Long-Arm Statute.

The forum state's law applies in federal diversity actions to determine if personal jurisdiction exists. See Erie R. Co. v. Tompkins, 304 U.S. 64, 77-80 (1938); Benton v. Cameco Corp., 375 F.3d at  1075 (10th Cir. 2004). In this matter, the Court first looks to New Mexico personal-jurisdiction law to determine if personal jurisdiction exists.  New Mexico's long-arm statute is designed to ensure a close nexus between a non-resident defendant's jurisdictional activities and the cause of action against which he must defend.  See Winward v. Holly Creek Mills, Inc., 83 N.M. 469, 471-72, 493 P.2d 954, 956-57 (1972).  New Mexico's long-arm statute provides, in pertinent part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> (1) the transaction of any business within this state;
>
> * * * *
>
> (3) the commission of a tortious act within this state[.]
>
> * * * *
>
> C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

N.M.S.A. 1978 § 38-1-16A(1),(3); (C).  The court "search[es] for the outer limits of what due process permits, because New Mexico's long-arm statute will extend as far as the constitution allows."  Santa Fe Technologies. v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d 1221, 1228 (Ct. App. 2001) (internal quotations omitted).

The New Mexico courts have held that long-arm statutes are in derogation of the common law and that, hence, they are to be strictly construed. See Worland v. Worland, 89 N.M. 291, 295,

551 P.2d 981, 985 (1976).  As the Honorable Bruce Black, United States District Judge, has stated:

> The New Mexico courts use a three-step test to decide whether personal jurisdiction exists over nonresident, out-of-state defendants: (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.

Rogers v. 5-Star Mgmt., Inc., 946 F. Supp. 907, 910 (D.N.M. 1996)(Black, J.)(quoting State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 748 P.2d 986, 987 (1989)).

"[A]s the first and third step of this test have been repeatedly equated with the due process standard of minimum contacts, the necessity of a technical determination of whether the non-resident committed an act enumerated by the long-arm statute has evaporated."  Santa Fe Technologies. v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d 1221, 1228 (Ct. App. 2001) (citations and internal quotations omitted).  For personal jurisdiction over a nonresident defendant to exist in New Mexico, "a plaintiff must allege an occurrence that falls within the long-arm statute, and the court must find the requisite minimum contacts to comport with due process."   Santa Fe Technologies v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d at 1228 (citations and internal quotations omitted).

"For purposes of the long-arm statute, a tortious act can occur in New Mexico when the actual harmful act originates outside the state, but the injury itself occurs inside New Mexico.  This is the place-of-the-wrong rule[ . . . ]  The place of the wrong is the location of the last act necessary to complete the injury.  A tort is not complete until the plaintiff suffers a cognizable injury."  Santa Fe Technologies v. Argus Networks, 2002-NMCA-030, ¶ 15, 42 P.3d at 1229 (citations and internal quotations omitted).

## 2.    **Conspiracy as a Tortious Act**.

The Court of Appeals for the Tenth Circuit has not yet decided whether allegations of

conspiracy can be enough to confer personal jurisdiction over nonresident defendants, but it has examined "whether the acts of a nonresident conspirator, which establish sufficient contacts with the forum state to make that conspirator amenable to service under that state's long arm statute, are likewise sufficient to establish personal jurisdiction over nonresident coconspirators." American Land Program, Inc. v. Bonaventura Uitgeers Maatschappij, N.V., 710 F.2d 1449, 1454 (10th Cir. 1983). The long-arm statute at issue in that case was similar to New Mexico's long-arm statute, because a basis of jurisdiction was "[t]he cause of any injury within this state whether tortious or by breach of warranty." American Land Program, Inc. v. Bonaventura Uitgeers Maatschappij, N.V., 710 F.2d at 1451 (quoting Utah Code Ann. § 78-27-24 (1977)). The Tenth Circuit noted that "[m]ere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." American Land Program, Inc. v. Bonaventura Uitgeers Maatschappij, N.V., 710 F.2d at 1454 (quoting Baldridge v. McPike, 466 F.2d 65, 68 (10th Cir. 1972)).

Under New Mexico law, "[a] civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 F.3d 201, 207 (internal quotations and citations omitted). The purpose of a civil-conspiracy claim is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." Seeds v. Lucero, 2005-NMCA-067, ¶ 12, 113 P.3d 859, 862 (internal quotations and citations omitted). In Seeds v. Lucero, the New Mexico Court of Appeals listed the elements of a civil conspiracy and compared a civil conspiracy to a criminal conspiracy:

> Civil conspiracy consists of showing [i] that a conspiracy between two or more individuals existed; [ii] that specific wrongful acts were carried out by the defendants

-14-

pursuant to the conspiracy; and [iii] that the plaintiff was damaged as a result of such acts. Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators. Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense.

Id. ¶ 18, 113 P.3d at 863-64 (internal quotations and citations omitted). "[A]n agreement by itself, without an independent, unlawful act, is not an improper means." Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 F.3d at 207.

Santa Fe Technologies v. Argus Networks, 2002 -NMCA- 030, ¶ 34, 42 P.3d at 1233-34. Nevertheless, the Supreme Court of New Mexico has "alluded to conspiracy as a viable basis of personal jurisdiction", Sanchez v. Church of Scientology, 115 N.M. 660, 663, 857 P.2d 771, 774 (1993). The New Mexico Court of Appeals has also found that conspiracy may be a constitutional basis for exercising personal jurisdiction over a defendant, see Santa Fe Technologies v. Argus Networks, 2002 -NMCA- 030, ¶ 34, 42 P.3d at 1233-34. The New Mexico Court of Appeals agrees that "a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts of effects in the forum can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws." Santa Fe Technologies v. Argus Networks , 2002 -NMCA- 030, ¶ 34, 42 P.3d at 1233-34. The Court is convinced that the Supreme Court of New Mexico, if confronted with the issue,  would find conspiracy an act which satisfies New Mexico's long-arm statute on the basis of tortious act within New Mexico.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir.2001).  The Supreme Court of New Mexico and the New Mexico Court of Appeals have repeatedly stated that New Mexico's long-arm statute extends as far as due process allows. See Santa Fe Technologies. v. Argus Networks, 2002-NMCA-030, ¶ 13, 42 P.3d 1221, 1228 (Ct. App. 2001); Smith v. Halliburton

-15-

Co., 118 N.M. 179, 185, 879 P.2d 1198, 1204 (Ct. App. 1994).  Accordingly, the Court interprets

New Mexico's long-arm statute to permit personal jurisdiction over non-resident defendants to the

fullest extent allowed under the Due Process Clause.  Santa Fe Technologies v. Argus Networks ,

2002 -NMCA- 030, ¶ 13, 42 P.3d at 1228.

### 3.    Constitutional Analysis.

Even if allegations of conspiracy can satisfy the requirements of New Mexico's long-arm

statute, the Court must also make certain that exercise of personal jurisdiction in a particular case is

consistent with due process.  A defendant must have minimum contacts with the forum state.  Brining

a nonresident into the forum courts must conform with constitutional notions of fair play and

substantial justice.

### a.    Minimum Contacts.

To establish that a defendant has minimum contacts with the forum state, "there must be some

act by which the defendant purposefully avails itself of the privilege of conducting activities within

the forum State, thus invoking the benefits and protections of its laws." Bell Helicopter Textron, 385

F.3d 1291, 1296 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  The purposeful availment

requirement "precludes personal jurisdiction as the result of random, fortuitous, or attenuated

contacts." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  "Purposeful

availment requires actions by the Defendant which create a substantial connection with the forum

state." OMI Holdings v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092 (quoting Asahi Metal Indus.

Co. v. Superior Court of Cal., 480 U.S. 102, 109 (1987)).  The court therefore "must determine

whether the defendant purposefully directed its activities at residents of the forum, and whether the

plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial

connection with the forum state." OMI Holdings v. Royal Ins. Co. of Canada 149 F.3d at 1091

(quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. at 109 (1987)). The court must

look at the quantity and quality of the defendants' contacts with New Mexico to determine whether

the assertion of this court's jurisdiction over these defendants comports with due process.

### b. Traditional Notions of Fair Play and Substantial Justice.

In determining traditional notions of fair play and substantial justice, the court must decide

"whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts

is reasonable' in light of the circumstances surrounding the case." Benton v. Cameco Corp., 375 F.3d

1070, 1078 (10th Cir. 2004)(internal quotation omitted). The court analyzes: (i) the burden on the

defendant; (ii) the forum state's interest in resolving the dispute; (iii) the plaintiff's interest in receiving

convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (v) the shared interest of the several states in furthering

fundamental social policies. See id. The purpose of considering the above factors is to place

"emphasis on reasonableness is the understanding that the burden on the defendant, while always a

primary concern, will in an appropriate case be considered in light of other relevant factors."

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). "Thus, the Due Process

Clause "does not contemplate that a state may make binding a judgment in personam against an

individual or corporate defendant with which the state has no contacts, ties, or relations." Id. at 294

(quoting Int'l Shoe Co. v. Washington, 326 US. 310, 319 (1945).

### LAW REGARDING VENUE

Venue is defined as the appropriate district court in which to file an action. See N.L.R.B. v.

Line, 50 F.3d 311, 314 (5th Cir. 1995). The purpose of venue is to assure that lawsuits are filed in

appropriately convenient courts for the matters raised and for the parties involved in the action.  See Leroy v. Great Western United Corp., 443 U.S. 173, 185 (1979).  Venue should not be confused with subject-matter jurisdiction, see Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006), nor personal jurisdiction, see Leroy v. Great Western United Corp., 443 U.S. 173, 185 (1979) ( "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."); 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3801 (2007). Any rights conferred by the federal venue statutes are waivable because no constitutional rights are implicated by them.  See Leroy v. Great Western United Corp., 443 U.S. 173, 183-87 (1979).  "To the extent that they are relevant, the laws relating to venue give added protection to defendants beyond those that are provided by the statutory and constitutional prerequisites of personal jurisdiction."  14D C. Wright, A. Miller & E. Cooper, supra § 3801.

> 28 U.S.C. § 1391(a) governs venue for cases founded only on diversity of citizenship:
> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c). § 1391(a)(3) is a "fall-back provision" used where "venue will be unavailable under § 1391(a)(1)."  Algodonera De Las Cabezas, S.A. v. Am. Suisse Capital, Inc., 432 F.3d 1343, 1345 (11th Cir. 2005) (internal quotations and citations omitted).

The Tenth Circuit has noted that

> There have been ... occasional gaps in the venue laws, i.e., cases in which the federal
> courts have jurisdiction but there is no district in which venue is proper. One such gap
> arose in connection with cases involving multiple plaintiffs and defendants. Venue was
> fixed at the residence of the defendant . . . . When there were multiple . . . defendants,
> the district of residence for venue purposes was the districts where . . . all the
> defendants reside. If they resided in different districts then there was no proper venue.
> In 1966 Congress acted to close the gap with a provision authorizing suit where 'the
> claim arose,' which in most cases provides a proper venue even in multiple-party
> situations. The development supports the view that Congress does not in general
> intend to create venue gaps, which take away with one hand what Congress has given
> by way of jurisdictional grant with the other. Thus, in construing venue statutes it is
> reasonable to prefer the construction that avoids leaving such a gap.

Monument Builders v. Am. Cemetery Ass'n, 891 F.2d 1473, 1479 (10th Cir. 1989) (quoting Brunette

Mac. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 710 n. 8 (1972)). The current venue statutes

were enacted to prevent this situation, especially in multi-party situations. See Monument Builders

v. Am. Cemetery Ass'n, 891 F.2d at 1479.

The proper venue for a matter under 28 U.S.C. § 1391(a)(2) can be in any district "in which

a substantial part of the events or omissions giving rise to the claim occurred."          28 U.S.C.

§1391(a)(2). See Monument Builders v. Am. Cemetery Ass'n, 891 F.2d at 1478-79 (holding venue

was proper in two different districts because the locus of the events or omissions giving rise to the

claim of illegal conduct adversely impacting consumer welfare was within the relevant market that

happened to be divided by the Kansas/Missouri state line).   Anaeme v. Florida, 169 Fed.Appx. 524,

528 (10th Cir. 2006) (holding that venue was not appropriate in the District of New Mexico where

the alleged events giving rise to the claims occurred in Florida).   A defendant's communications

directed at the district where venue is sought by the plaintiff may constitute the events or omissions

that satisfy the venue requirements of 28 U.S.C. § 1392(a)(2). See Master Tech. Products, Inc. v.

Smith, 181 F.2d 910, 914 (N.D. Ill. 2002) (holding that venue was proper in the Northern District of Illinois where the defendant called and sent confidential agreements to Illinois, even though the defendant was never personally in Illinois); New Life Brokerage Servs. v. Cal-Surance Ass'n, 222 F.Supp.2d 94, 109 (D.Me. 2002)(holding that venue was proper when communications were directed to the District of Maine by the defendant about insurance coverage in a tort and contract suit brought by plaintiff after its insurance claim was not covered under the policy the insurance broker recommended and procured for it); Sacody Technologies, Inc. v. Avant, Inc., 862 F.Supp. 1152, 1157 (S.D.N.Y. 1994) (holding that venue was proper in the Southern District of New York when defendants' dealings with the plaintiff took place over the telephone, and by correspondence and facsimile, in Massachusetts and New York). The substantiality requirement of 28 U.S.C. 1391(a)(2) "is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." Fodor v. Hartman, No. 05-CV-02539-PSF-BNB, 2006 WL 1488894 at *4 (D. Colo. May 30, 2006) (Figa, J.) (holding that plaintiff's averments that the defendant may have made telephone calls to him in Colorado, or sent him mailings or email relating to unspecified business matters were not substantial, because the court was unable to determine if "these are acts or omissions that give rise to plaintiff's claims, or are merely tangential contacts."); Myelle v. Am. Cyanamid Co., Nos. CIV. A. 92-5243, CIV. A. 92-6136, CIV. A. 93-323, 1993 WL 93422 at *6 (E.D. Pa. Apr. 1, 1993) (Vanartsdalen, J.)(holding that venue was improper in Pennsylvania where the "substantial part of the events giving rise to the claims alleged herein occurred in South Carolina" and those events " ensuing relevant evidence therefrom, irrefutably constitute the crux of plaintiffs' claims.").

## ANALYSIS[2]

The Court has already dealt with the personal jurisdiction issue for many of the Defendants, and there does not appear to be any reason to distinguish Gibson from the other alleged co-conspirators.  Moreover, a substantial amount of the alleged activities and omissions occurred in New Mexico.  Finally, Applied Capital has dismissed the California case, thus mooting any request to dismiss or stay for a parallel proceeding.

I.      **THE COURT HAS PERSONAL JURISDICTION OVER GIBSON BECAUSE HE HAS PURPOSEFULLY AVAILED HIMSELF OF THE PRIVILEGE OF CONDUCTING ACTIVITIES IN NEW MEXICO BY ENGAGING IN A CONSPIRACY CENTERED IN NEW MEXICO.**

What case law is available suggests that, if the plaintiff makes a prima facie showing of a conspiracy among the defendants to commit a tort in a state, the state has personal jurisdiction over the individual defendants.  Here, Applied Capital has made a sufficient prima facie showing that the Defendants intended to defraud Applied Capital in New Mexico by sending a series of facsimiles, references, telephone calls, and documents into the state in hopes of inducing Applied Capital to send them money.  Moreover, the Court has already determined that it has personal jurisdiction over Bellinger, Voyles, and Heritage Commercial, and it does not appear by said reason to distinguish Gibson from the other Defendants on the basis of personal jurisdiction.

---

[2]Given that Gibson did not expressly contact the Court about the motion after conducting discovery and affirmatively filed motions to dismiss based on a settlement, it may be that Gibson has waived his personal jurisdiction and venue arguments.  See Harbison v. Johnston, 2001 -NMCA- 05, ¶ 10, 28 P.3d 1136, 1140 (noting that "[w]hen a party requests affirmative relief prior to a ruling on his objections to the court's personal jurisdiction, he waives all objections to the court's in personam jurisdiction." (internal quotations omitted)).

**A.** **APPLIED CAPITAL HAS MADE A PRIMA FACIE SHOWING OF A CONSPIRACY AMONG THE DEFENDANTS TO COMMIT A TORT IN NEW MEXICO**

The undenied allegations in Applied Capital's Complaint, see Fed. R. Civ. P. 8(b)(6); the undenied requests for admission, see Fed. R. Civ. P. 36(a)(3); and the documents and deposition testimony attached to Applied Capital's summary judgment papers demonstrate that, as a matter of undisputed material fact, Gibson, acting on behalf of Legato, conspired with Presley and Herman (acting on behalf of New Energy), Scogin (acting on behalf of Grizzly), Ambrose, Voyles, and Heritage Commercial Services to defraud Applied Capital out of $550,000.00 in the rig transaction.

In this case, there were two companies with Gibson acting as the link between them. First, Gibson agreed with Presley, Herman, and Scogin to fraudulently induce Applied Capital into entering the rig transaction and also to breach the Closing Agreement; the $550,000.00 wire transfer from Applied Capital would be used not to buy, as represented, a drilling rig from Grizzly, but rather to make payments to the co-conspirators and fund the so-called HYIP program. The deposition testimony of Ed Presley provides the most detailed explanation of the scheme. See Presley Depo. at 15:18-19:24. Second, Gibson agreed with Ambrose and Voyles, the bogus "credit references," that the references would provide false information about past transactions in which Legato had purchased equipment and other goods on credit. Gibson's request to and agreement with these individuals to defraud Applied Capital is evident from the fact that he was asking them to confirm commercial transactions that everyone -- involving Gibson -- acknowledges did not occur. See Fourth Complaint, Exhibit 2, Letter from HSBC to Francis Gibson (dated April 27, 2004); Fourth Complaint, Exhibit 4, Letter from Francis Gibson to Jim Scott (dated May 12, 2004).

In conclusion, the undisputed facts show that Gibson, acting on behalf of Legato, conspired

with Presley and Herman, acting on behalf of New Energy; Scogin, acting on behalf of Grizzly Drilling; Ambrose and; Voyles, acting on behalf of Heritage Commercial Services to defraud Applied Capital out of $550,000.00 in the rig transaction and breach the Closing Agreement.

Since the Court finds that Gibson and his co-defendants engaged in a civil conspiracy against Applied Capital, personal jurisdiction is appropriate over him under New Mexico's long-arm statute. See Santa Fe Technologies v. Argus Networks, 2002 -NMCA- 030, ¶¶ 13, 34, 42 P.3d at 1228, 1233 (Ct. App. 2001) (holding that personal jurisdiction may be constitutionally based upon conspiracy so long as it is not based upon random or fortuitous contacts nor the unilateral acts of a third party and that some of the inquiry under the New Mexico long-arm statute may be equated with the due process standard of minimum contacts). "In a conspiracy, an individual's actions in furtherance of the conspiracy are not unilateral because conspiratorial acts have at their foundation an agreement and the involvement of other co-conspirators." Santa Fe Technologies v. Argus Networks, 2002 -NMCA-030, ¶¶ 34, 34, 42 P.3d at 1234.

**B.      THE COURT HAS ALREADY DETERMINED THAT IT HAS PERSONAL JURISDICTION OVER BELLINGER, VOYLES, AND HERITAGE COMMERCIAL AND THERE DOES NOT APPEAR TO BE A SOUND REASON FOR DISTINGUISHING GIBSON**

The Court has already determined, in deciding Bellinger's, Voyles', and Heritage Commercial's motions to dismiss, that Applied Capital has made a prima facie showing, for purposes of these motions, that a conspiracy to defraud Applied Capital existed, that the Defendants were members of the conspiracy and knowingly participated in such conspiracy, and that the co-conspirators committed tortious acts pursuant to the conspiracy in New Mexico. See Order at 1, filed March 27, 2006 (Doc. 101). The Court has already concluded that New Mexico's long-arm statute encompasses the Defendants' actions.    See id.    The Court further ruled that there was sufficient

-23-

evidence that the Defendants, through their tortious conduct, purposefully availed themselves of the privilege of conducting activities within New Mexico, thus invoking the benefits and protections of New Mexico's laws.  See id.

The Court has also concluded that the exercise of jurisdiction over at least Bellinger, Voyles, and Heritage Commercial, does not offend traditional notions of fair play and substantial justice, and is thus reasonable.  See Order at 1-2, filed March 27, 2006 (Doc. 101).  The Court has therefore concluded that it has personal jurisdiction over Bellinger, Voyles, and Heritage Commercial.  See Order at 2, filed March 27, 2006 (Doc. 101). .

The Court has studied the materials presented to the Court and does not see a material difference, for purposes of personal jurisdiction, between Gibson and Bellinger, Voyles, and Heritage Commercial.  If anything, the evidence suggests that Gibson may have been a leader of the conspiracy.  There is evidence that he requested Applied Capital to provide financing for the purchases by Legato Staffing, on which he served as a director, of the drilling rig in Wyoming.  Gibson concedes that he sent, by facsimile transmission, credit references to Applied Capital's headquarters in response to Applied Capital's request.  See Fourth Complaint ¶¶ 20-24, at 5; Memorandum in Support of Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendant Francis Gibson on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust Enrichment Claims, filed February 2, 2007 (Doc. 180), Exhibit 1, Deposition of Francis Gibson at  92:15-94:23, 97:7-99:25, 100:12-102:14 (taken December 10, 2004)("Gibson Depo."); Requests for Admission, Nos. 4-5, 7-32; Memorandum in Support of Plaintiff Applied Capital, Inc.'s Motion for Partial Summary Judgment Against Defendants Edward L. Presley and New Energy Co., LLC on Applied Capital's Civil Conspiracy, Fraud, Breach of Contract and Unjust

Enrichment Claims, filed February 2, 2007 (Doc. 182) Exhibit 4, Affidavit of Mark Burkhard ¶ 6, at 3. (executed February 1, 2007).  These representations were false. See id.

It is reasonable and fair to exercise jurisdiction over Gibson under these circumstances, because "the substantial contact with New Mexico through the actions of conspirators in furtherance of a conspiracy can make the exercise of jurisdiction [. . .] reasonable and fair." Id.  The allegations of Gibson's and the other Defendants' fraudulent conduct, and their contacts with New Mexico, is sufficient for the Court to exercise personal jurisdiction over Gibson.

## II.   THIS COURT IS THE PROPER VENUE FOR THIS MATTER BECAUSE GIBSON'S MAIL, FACSIMILE TRANSMISSIONS, AND TELEPHONE CALLS WERE ALL DIRECTED AT THE DISTRICT OF NEW MEXICO AND ARE A SUBSTANTIAL BASIS FOR APPLIED CAPITAL'S CLAIMS.

The asserted basis for Applied Capital's venue in the District of New Mexico is the allegation that Gibson "purposely directed fraudulent misrepresentations to Applied Capital in New Mexico via mail, facsimile transmissions, and telephone calls."  Fourth Complaint ¶ 12, at 3.  Applied Capital alleges that Gibson, in his capacity as director of Legato Staffing, sent, by facsimile transmission to Applied Capital in response to Applied Capital's requests. See Defendants' Consolidated Response at 8-9.  On May 13, 2004, Gibson sent to Applied Capital, by facsimile transmission , two letters containing detailed representations about six- and seven-figure purchases of inventory and equipment that Legato had made on credit in the recent past.  For example, Gibson represented that Legato had purchased $600,00.00 in loose diamonds and watches from Ambrose or his company, Shine, Inc., in October 2003. See Fourth Complaint ¶¶ 20-24, at 5; Gibson Depo. at 92:15-94:23, 97:7-99:25, 100:12-102:14;  Requests for Admission, Nos. 4-5, 7-32; Burkhard Aff.  ¶ 6, at 3. Gibson contends that, because he is not a resident of New Mexico and, at all times, was acting on behalf of Legato, who is not a named party, there is no basis for venue in the District of New Mexico

under 28 U.S.C. § 1391(b).  See Gibson's Motion ¶ 3, at 1.

Gibson does not explain where else Applied Capital could file this action and secure jurisdiction over all the parties.  Instead, he argues that sending materials to the state, the harm occurring here, and being a co-conspirator with others who sent materials here is not enough to confer venue.  Gibson is wrong on the law and does not take into account the considerable contacts the conspiracy had with New Mexico.

The ultimate injury from the Defendants' alleged business torts occurred in New Mexico because Applied Capital's headquarters is located in New Mexico.  See Fourth Complaint ¶ 1, at 1. Also, the co-conspirators' activities directed at the State are considerable.  Based on the record before the Court, it appears that the Court is the appropriate venue for Applied Capital's case because all of Gibson's actions were directed at Applied Capital, which is incorporated in New Mexico. Because New Mexico was the locus of Gibson's communications, a substantial part of the events or omissions giving rise to the claim occurred in New Mexico.

Gibson argues that venue is improper under 28 U.S.C.  § 1391(a)(2) because the "Tenth Circuit has yet to make a definitive ruling on whether the place of the injury can be equated with the 'substantial part of the events' in allegations of business torts."  Gibson's Reply at 6.  He argues that, under both Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995), and Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371-72 (11th Cir. 2003), "the rule that a tort is not complete until there is an injury does not permit a commercial plaintiff to subvert federal venue requirements by searching for a district in which to reside at the time of the anticipated injury as to obtain venue under 28 U.S.C. § 1391(a)(2)." Gibson's Reply at 6.

The two cases from other circuits are not, however, inconsistent with the Court's ruling in

-26-

this case. The plaintiff's claim in Woodke v. Dahm involved "the defendant's unauthorized removal of plaintiff's product's identifying marks before reselling the goods." Woodke v. Dahm, 70 F.3d at 985. In determining that venue was inappropriate in the Northern District of Iowa, the United States Court of Appeal for the Eighth Circuit stated that venue was improper because the events giving rise to the plaintiff's claim did not occur in Iowa — he did not claim that the trademarks were altered in the Northern District of Iowa. See Woodke v. Dahm, 70 F.3d at 985. Lastly, the Eighth Circuit declined to express any opinion on whether the locus of a conspiracy might provide venue. See id. ("A conspiracy is, indeed a wrongful act in itself; but we express now view on whether the locus of the conspiracy might provide venue because it appears that [the plaintiff] produced no evidence of such a conspiracy in the court below."). Jenkins Brick Co. v. Bremer involved a transfer of venue under 28 U.S.C. § 1404(a). See id., 321 F.3d at 1368. The United States Court of Appeal for the Eleventh Circuit found that venue would have been improper in the transferor district— the Middle District of Alabama— because none of the conduct giving rise to the plaintiff's claim occurred in the transferor district. See Jenkins Brick Co. v. Bremer, 321 F.3d at 1372 (noting that claim involved alleged violation of noncompete agreement and that: the employment contract was presented to the defendant in Georgia, that contract was executed in Georgia, and the non-compete agreement portion of the contract was intended to be performed primarily in Georgia). A substantive part of the events or omissions giving rise to Applied Capital's claims occurred in the District of New Mexico, unlike the events involved in both Woodke v. Dahm, 70 F.3d at 985, and Jenkins Brick Co. v. Bremer, 321 F.3d at 1372.[3]

---

[3]  Given that it has been determined that venue is proper under 28 U.S.C. § 1391(a)(2) the Court need not decide if venue would also be proper under 28 U.S.C. § 1391(a)(3) and (c).   See Algodonera De Las Cabezas, S.A. v. American Suisse Capital, Inc., 432 F.3d 1343, 1345 (11ᵗʰ Cir.

## III.    THERE IS NO PARALLEL STATE PROCEEDING THAT WOULD JUSTIFY <u>THE COURT'S ABSTENTION IN THIS MATTER.</u>

One of Gibson's challenges was based on the allegations in Applied Capital's Complaint and on the existence of a pending California case, California Superior Court, Orange County, No. 04CC08379, against Gibson's principal, Legato Staffing.  <u>See</u> Gibson's Motion ¶ 9, at 2.  On April 15, 2005, the original date that Applied Capital's response to the motion to dismiss was due, Applied Capital voluntarily dismissed its California case, No. 04CCO8379, as permitted in Cal. Civ. Proc. Code § 581 (West 1993).  <u>See</u> Plaintiff's Consolidated Response, Exhibit 15.  Gibson's <u>Colorado River</u> abstention argument is moot in light of the dismissal of the California action.  Moreover, the Court is not convinced that the California proceeding was so parallel that it would have, if still pending, justified the Court treating the situation as involving such exceptional circumstances that the Court should exercise its discretion to dismiss or to stay this case, and decline the exercise of federal court jurisdiction. <u>See</u> <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813-16  (1976).

**IT IS ORDERED** that Defendant Gibson's Motion to Dismiss on Grounds of Improper Venue and Parallel State Proceeding is denied.

_____
UNITED STATES DISTRICT JUDGE

---

2005).

-28-

*Parties and Counsel*:

Henry M. Bohnhoff
Bryan J. Davis
Rodey, Dickason, Sloan, Akin
& Robb, P.A.
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Francis Gibson
Hailey, Idaho

> *Defendant pro se*

Michael Alarid, Jr.
The Alarid Law Firm, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant Gary Bellinger*

Gerald Lee Scogin, Jr.
Lawrenceville, Illinois

> *Defendant pro se*

Justin Herman
Pittsburgh, Pennsylvania

> *Defendant pro se*

Robert A. Johnson
Johnson & Nelson, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants Kirk Voyles and*
> *Heritage Commercial Services, Inc.*

Brian Ambrose
Laguna Beach, California

> *Defendant pro se*

New Energy Co. LLC
Sheridan, Wyoming

     *Defendant pro se*

Edward Presley
New Energy Co. LLC
Sheridan,Wyoming

     *Defendant pro se*